The Consolidated Electric Storage Company, Respondent, *v.* The Atlantic Trust Company, Appellant.

161 605
166 97
161 605
168 ³611

1. Trust — Agreement to pay over a Fund upon Certain Conditions. A tripartite agreement providing that a fund, received by a trust company whether from the plaintiff as licensee of an electric company, or from another party interested in the performance of the license agreement, shall be paid, after deduction of its commissions, by the trust company to the licensor in case the licensee shall from time to time fail to pay the licensor certain agreed royalties and additional payments, and further providing that, upon full performance by the licensee, so much of the fund as may remain shall be repaid to the latter, constitutes the trust company a trustee of the fund, and entitles the licensee to recover by action so much of it as remains unexpended, where the licensor has waived all claims to it and has authorized the trust company to pay it to the licensee.

2. Guaranty Not Favored. Such an agreement does not constitute the trust company a guarantor, the rule being that an obligation will not be deemed a guaranty where there are no words to that effect, nor any inference, derivable therefrom, that the parties intended a guaranty.

3. Appeal — Unanimous Decision — Facts not Reviewable. A general decision on the merits, rendered in favor of the plaintiff, is equivalent to a general verdict; and where the judgment entered thereon is unanimously affirmed by the Appellate Division, the Court of Appeals is precluded from examining the evidence as to its sufficiency, either to sustain the material facts alleged by the plaintiff, or to negative those alleged by the defendant in defense or by way of counterclaim. Therefore, questions, dependent on the facts, such as a claim for a reformation of the tripartite agreement, as to whether it expressed the intentions of the parties, as to the consideration for the trust company's making it, as to the receipt of the fund, and as to the correctness of the amount of the judgment, cannot be considered by the Court of Appeals.

*Consolidated El. Storage Co.* v. *Atlantic Trust Co.*, 31 App. Div. 630, affirmed.

(Argued February 5, 1900; decided February 16, 1900.)

Appeal from a judgment and order of the Appellate Division of the Supreme Court in the first judicial department, entered June 20, 1898, affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

This action was brought to recover the balance of a sum of money deposited by the plaintiff with the defendant, and

**606**   Cons. El. Storage Co. *v.* Atlantic Trust Co.   [Feb.,

Points of counsel.   [Vol. 161.

which the defendant promised to pay. The acknowledgment of the deposit and promise is contained in a written instrument dated June 2, 1890, to which the Consolidated Electric Storage Company (the plaintiff) was party of the first part, the Brush Electric Company party of the second part, and the Atlantic Trust Company (the defendant) party of the third part.

The further material facts are stated in the opinion.

*John E. Parsons* and *Henry L. Stimson* for appellant. The defendant, by the terms of the tripartite agreement, was entitled to judgment in its favor against the plaintiff's claim, both upon the pleadings, which admitted, and upon the evidence, which showed, that no money was received by the defendant from the plaintiff. (*Stevenson* v. *Kaiser,* 29 N. Y. Supp. 1122; *Gates* v. *Dundon,* 19 N. Y. Supp. 390; *Bernstein* v. *Crow,* 22 Misc. Rep. 99; *McQueen* v. *Lockwood,* 79 Hun, 612; *Cauchois* v. *Proctor,* 1 App. Div. 16; *Hutchins* v. *Van Vechten,* 140 N. Y. 115; *Brady* v. *Hutkoff,* 13 Misc. Rep. 515; 155 N. Y. 681; *Potter* v. *Smith,* 70 N. Y. 299; *Holmes* v. *Jones,* 121 N. Y. 461; *Cromwell* v. *Hughes,* 12 Misc. Rep. 372.) No money was received by the trust company at all. No money was received by it from the traction company. There was merely an exchange of promises; that of the traction company contained in a promissory note, and that of the defendant in a certificate of deposit. There was no borrowing, no loan. All that occurred was a mutual promise between the traction company and the trust company, not performed on its part by the traction company. (*Dunning* v. *Leavitt,* 85 N. Y. 30; *Crowe* v. *Lewin,* 95 N. Y. 423; *Brisbane* v. *Beebe,* 48 N. Y. 631; *Wheat* v. *Rice,* 97 N. Y. 296; *F. Nat. Bank* v. *Chalmers,* 144 N. Y. 432; 2 Daniel on Neg. Inst. [4th ed.] § 1698; 1 Morse on Banks, § 297.) The tripartite agreement cannot be turned into a positive contract by the trust company to pay to the storage company $215,000, less payments to the Brush Company, resting for its support upon the transaction between the traction com-

1900.]   Cons. El. Storage Co. *v.* Atlantic Trust Co.   **607**

N. Y. Rep.]        Opinion of the Court, per Gray, J.

pany and the trust company. (*Emmett* v. *Penoyer*, 151 N. Y. 564; *Hull* v. *Adams*, 1 Hill, 601; *Delamater* v. *Bush*, 63 Barb. 168; *Riley* v. *Riley*, 83 Hun, 398; *Graves* v. *Porter*, 11 Barb. 592.) The decision upon which judgment was entered did not correspond either with the complaint or with the tripartite agreement. (*Corning* v. *Corning*, 6 N. Y. 97; *Shephard* v. *Little*, 14 Johns. 209; *Hebbard* v. *Haughian*, 70 N. Y. 54; *Bowen* v. *Bell*, 20 Johns. 338.)

*William B. Hornblower* and *Howard A. Taylor* for respondent. There is no question open to review in this court. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Petrie* v. *Trustees, etc.*, 158 N. Y. 458; *Ayers* v. *D., L. & W. R. R. Co.*, 158 N. Y. 254; *Meserole* v. *Hoyt*, 161 N. Y. 59; *People ex rel.* v. *Barker*, 152 N. Y. 417; *Rosenstein* v. *Fox*, 150 N. Y. 354; *Health Dept.* v. *Weekes*, 22 App. Div. 110; *Marden* v. *Dorthy*, 160 N. Y. 39; *Trustees, etc.*, v. *Vail*, 151 N. Y. 463; *Stokes* v. *Mackay*, 140 N. Y. 640.)

Gray, J. The plaintiff's demand against the defendant relates to two written agreements; one of which was made between it and the Brush Electric Company and the other of which was made between the plaintiff, the Brush Electric Company and the defendant, the Atlantic Trust Company. The first of these agreements granted a license to the plaintiff to use certain improvements in secondary batteries, of which the Brush Company was the patentee, for a term of six years from April 1st, 1890; with an option to the licensee for an additional term. It provided for the payment of annual royalties, which should not be less than $25,000, in each year, and that, in the first year, there should be paid, at certain times, in cash, in addition to the royalties, the sum of $65,000. It was, also, provided therein that the licensee should, simultaneously with the execution of the agreement, give to the Brush Company satisfactory security that the terms of the agreement would be carried out. The second of the above-mentioned agreements was executed, as it recites, in order

**608**  Cons. El. Storage Co. *v.* Atlantic Trust Co.  [Feb.,

Opinion of the Court, per Gray, J.  [Vol. 161.

that the plaintiff should perform its covenant in the license agreement to furnish satisfactory security to the Brush Company that its terms should be carried out by it. Thereby the plaintiff assigned to the defendant, the Atlantic Trust Company, and the latter acknowledged the receipt of, the sum of $215,000. The defendant agreed to hold these moneys in trust, as security for the punctual and faithful fulfillment by the plaintiff of the terms of the license agreement. It was mutually agreed that the defendant should apply $65,000, of the trust fund to the payments which were required, by the license agreement, to be made to the Brush Company in the first year and that the installments of royalties, if not paid punctually, should be paid by the defendant. If the Brush Company should have been paid the royalties due in any year under the license agreement, then, upon its certificate to that effect, the defendant was to pay the $25,000, to the plaintiff. It was, further, provided that whenever the terms of the license agreement shall have been fully complied with by the plaintiff, the Brush Company was to " file with the party of the third part, (being the defendant), a written certificate of such full compliance and thereupon, and upon receiving such certificate, so much of said trust fund as may remain, with all accumulations of interest thereon, if any, shall, subject to the compensation of the trustee, be repaid to the party of the first part."

It was alleged in the complaint that in November, 1895, there remained in the hands of the defendant, of the amount received by it under the tripartite agreement, the sum of upwards of $35,000, and that the Brush Company had waived, in writing, any claim to said balance and had authorized the defendant to pay the same to the plaintiff. It was for the recovery of these moneys that the plaintiff demanded judgment against the defendant. The answer conceded the making of the agreement referred to in the complaint; but denied the receipt by the defendant from the plaintiff, or from any one on its behalf, of the sum of $215,000, or that there remained in its hands in November, 1895, of any amount paid to it by the

plaintiff, or by any one on its behalf, any sum whatever, or that it was indebted to the plaintiff. The answer, further, alleged various facts, with respect to the making of the tripartite agreement, and claimed that its execution was induced by the mistake and misapprehension of its president and a reformation thereof was demanded, in so far as it required the payment by the defendant to the plaintiff of any sums of money. The defendant, also, counterclaimed for moneys paid by it to the Brush Company, which were due from the plaintiff and which it claimed to have paid under a "guaranty," and for moneys alleged to be due it for dividends declared upon capital stock of the plaintiff, of which it was a holder. The plaintiff, in its reply, denied the indebtedness set up in the counterclaim. It alleged that the $215,000, mentioned in the tripartite agreement, was received by the defendant from a corporation known as the United Electric Traction Company and that that sum "was placed by the defendant, according to the order of the traction company, to the credit of the plaintiff." The plaintiff alleged that it believed that the sum was "obtained by the traction company from the defendant as a loan, but that at that time the plaintiff had no knowledge of the source from which the money came."

Without further reference to the pleadings, it is apparent therefrom that the principal issue between the parties was with respect to the alleged liability of the defendant, under the tripartite agreement, to pay to the plaintiff the unexpended portion of the $215,000, which remained in the defendant's hands after all rights thereto on the part of the Brush Company had been waived, and the payment thereof to the plaintiff authorized, in November, 1895. The $215,000, which were admitted to have been received and held in trust by the defendant for the security of the Brush Company, with respect to the fulfillment by the plaintiff of the terms of the license agreement, represented the $65,000, which were to be paid in the first year, and the aggregate of the payments of $25,000, to be paid in each of the six years of the term of the license.

It is perfectly clear that, by the terms of the tripartite agree-

77

ment, the trust funds held by the defendant were applicable, in the first place, to the discharge of the plaintiff's liabilities to the Brush Company and, in the second place, upon the Brush Company having no claim upon the same, or upon any unexpended portion thereof, to the payment thereof to the plaintiff. They were not to be expended, or paid out, by the express language of the agreement, to any person except as therein provided and the provision, in effect, was that, as to any portion of the fund not required to be paid out to the Brush Company, the defendant was obligated to pay it over to the plaintiff. It appears in the history of the transactions which occurred between the various parties, that the United Electric Traction Company was interested in the making of the agreement between the Brush Company and the plaintiff, by which the latter acquired the right to use certain electrical patents in its business, and the $215,000, which would be required to be paid under the terms of the license agreement during its continuance, were provided for by the traction company, through an arrangement with the defendant by which a trust fund was created and held by it. In that way the tripartite agreement came to be made and, as we are also informed, it was intended thereby to meet the objection, which had been made by the Brush Company to an earlier proposition that the defendant should become a guarantor for the plaintiff's performance of its covenants.

This is quite sufficient as a statement of the facts to make the situation of the parties intelligible. Upon the trial, the plaintiff was awarded a judgment of upwards of $59,000, upon a decision by the trial judge, which found, generally, on the merits, against the defendant upon its counterclaim, and in favor of the plaintiff upon its demand. The judgment has been unanimously affirmed by the Appellate Division and the effect of that affirmance is to deprive this court of jurisdiction to review any question of fact in the case. The general form of the decision made it equivalent to a general verdict rendered by a jury and the same presumptions apply as in the latter case. We are required, upon this appeal, to presume

that all the facts have been found, which are necessary to support the judgment and which were warranted by the evidence. The conclusiveness of the judgment is such as to preclude us from an examination of the evidence in an inquiry as to its sufficiency, either to sustain the material facts alleged by the plaintiff, or to negative those alleged by the defendant in defense, or by way of counterclaim. (*Szuchy* v. *Hillside Coal & Iron Co.*, 150 N. Y. 219; *Amherst College* v. *Ritch*, 151 ib. 282; *Marden* v. *Dorthy*, 160 ib. 39.)

All questions relating to the claim for a reformation of the tripartite agreement, as to whether it expressed the intentions of the parties, as to the consideration for its making and as to the receipt by the defendant of the $215,000, depended upon the facts as disclosed by the evidence and they have been conclusively settled. It was the purpose of the constitutional amendment, which, in 1894, changed the provisions of the judiciary article, and it was the legislative intent, in giving effect to the amendment by the Code enactments since, by confining the jurisdiction of this court to the review of questions of law only, to relieve it from a volume of litigation, that might well close with the determinations of the Appellate Divisions. The constitutional amendment, in providing for the Appellate Divisions, created courts of great dignity, with enlarged powers and high responsibility; upon whose review of the facts, inquiry into the evidence, as to its quantity and sufficiency, must cease, when the case is brought to this court for further consideration.

The exception, which was filed by the defendant to the decision, conferred ample jurisdiction upon the Appellate Division to review all the questions of fact and of law in the case, (Code Civ. Pro. § 1022), and it raises the question of law for this court, upon this appeal, whether, the questions of fact being settled, affirmatively for the plaintiff and negatively as to the defendant's claim, the legal conclusion necessarily follows that the agreement between the parties was such as to create the liability on the part of the defendant for which a judgment was directed.

The appellant's contention is that the defendant was not liable to the plaintiff for the unexpended moneys that may have remained in its hands of the trust fund; because the tripartite agreement does not create such a liability, when considered in the light of admissions in the pleadings.   The position is not a tenable one and the appellant, in order to defend against its apparent liability, is obliged to argue upon the evidence that the trust fund mentioned in the agreement was not actually received by it, whether from the plaintiff, or from the traction company, and that there was no positive contract to pay it over to the plaintiff, less what had been paid to the Brush Company.   It is true that the plaintiff's pleading admitted that the $215,000, were not received from it by the defendant, as it appears to be stated in the tripartite agreement; but the fact, nevertheless, must now be deemed to be established that that sum was received by the defendant and was held by it as a trust fund, in the disposition of which only the Brush Company and the plaintiff were interested. They were the only parties entitled by the contract to receive the fund, at times and in amounts as were specified.   The contract made no reservation in favor of the defendant, beyond its commissions.   However important it may have been for the defendant to establish that the transaction, through which it bound itself to hold the sum of $215,000, as a trust fund to the credit of the plaintiff and for application as directed, was a mere form, or an arrangement with the traction company, out of which no positive liability in law arose and that, therefore, its liability was only apparent and subject to superior equities in its favor, these were questions for the consideration of the courts below and become immaterial here.   We may not look beyond the general judgment in the plaintiff's favor, which establishes the fact that the defendant had the fund and that there was no defense, or offset, to the contractual obligation to pay to the plaintiff what remained of it in its hands.   If we could consider the nature of the transaction had between the defendant and the traction company, as it is explained in the record, I should still have

no doubt that, so far as the plaintiff is concerned, the defendant, in law, was as much chargeable with the receipt of the $215,000, for the purposes of the trust, as if the moneys had in fact been handed to it "in current funds," as its certificate of deposit recites.

The agreement did not make the trust company a guarantor. Its position was, simply, as it is now settled to be, that of a party holding a fund in trust to pay it over, upon conditions specified, to the plaintiff, or to the Brush Company, and with no right thereto of its own, beyond the compensation to which it was entitled. In order that a party's obligation shall be regarded as that of a guarantor, such must appear to have been the intention of the parties and neither in words, nor by implication from the language used, can such an intention be said to be expressed in this contract.

Nor are we concerned with the question of whether the judgment, which was awarded to the plaintiff, was correct with respect to its amount. That question was one dependent upon the facts and the court could award judgment for the sum appearing due by the case made. (Code Civ. Pro. § 1207.) If there was any mistake in that respect, the remedy was by application to the court below. The question is not brought to this court.

The judgment and order should be affirmed, with costs.

Parker, Ch. J., O'Brien, Haight, Landon, Cullen and Werner, JJ., concur.

Judgment and order affirmed.