CITY OF NIAGARA FALLS, Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

PATRICK McINTYRE, Respondent, v. THE NEW YORK CENTRAL AND HUDSON RIVER RAILROAD COMPANY, Appellant.

*City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.*, 41 App. Div. 93, affirmed.

(Argued June 20, 1901; decided October 4, 1901.)

APPEALS from judgments of the Appellate Division of the Supreme Court in the fourth judicial department, entered June 12, 1899, affirming judgments in favor of plaintiffs entered upon the report of a referee.

*Charles A. Pooley* for appellant.

*Morris Cohn, Jr.,* for respondents.

BARTLETT, J. These cases were tried together before a referee, although separate judgments were entered. In the city case the form of the referee's report is a decision stating concisely the grounds upon which the issues were decided, while in the case of McIntyre the report states separately the facts found and the conclusions of law. (Code of Civil Procedure, § 1022.)

The practice under the Constitution (Art. 6, § 9) and the Code of Civil Procedure (§ 191), which provide that no unani-. mous decision of the Appellate Division of the Supreme Court that there is evidence supporting, or tending to sustain a finding of fact, or a verdict not directed by the court, shall be reviewed by the Court of Appeals, is well settled by numerous adjudications. The short form of decision is to be treated as a general verdict and we are not permitted to look into the record to determine whether there is any evidence to support it.

If the findings of fact and conclusions of law are separately stated, the facts found are conclusive here and this court is not only forbidden to examine the record to see if the findings of fact are supported by evidence, but cannot consider the question of law whether there are findings without any evidence to sustain them.

The only questions open to review in this court are such as are raised by exceptions to the admission or rejection of evidence, the charge of the trial judge to the jury and questions of law not based on sufficiency of the evidence.

These questions have been so fully discussed by the court that a citation of a few cases will suffice without further comment. (*Amherst College* v. *Ritch*, 151 N. Y. 282; *Ayres* v. *D., L. & W. R. R. Co.*, 158 N. Y. 254, 257, 258; *Farleigh* v. *Cadman*, 159 N. Y. 169, 173; *Marden* v. *Dorthy*, 160 N. Y. 39; *Reed* v. *McCord*, 160 N. Y. 330, 337; *Meserole* v. *Hoyt*, 161 N. Y. 59, 61; *Cronin* v. *Lord*, 161 N. Y. 90, 94, 95; *Hilton* v. *Ernst*, 161 N. Y. 226, 228; *Cons. El. Storage Co.*, v. *Atlantic Trust Co.*, 161 N. Y. 605, 610, 611; *Lewis* v. *Long Island R. R. Co.*, 162 N. Y. 52; *Kleiner* v. *Third Avenue R. R. Co.*, 162 N. Y. 193; *Lawrence* v. *Cong. Church*, 164 N. Y. 115; *Clark* v. *Nat. Shoe & Leather Bank*, 164 N. Y. 498.)

In *Meserole* v. *Hoyt* (*supra*) Judge O'BRIEN (at page 61), speaking for the court as to the question of law whether there is any evidence, said: "The unanimous affirmance of the judgment concludes this court, and we are required to assume, in such a case, that the evidence was of such a character as to justify the submission of the disputed question to the jury.

It is quite true that the question whether there is any evidence tending to prove a fact is one of law, but the convention that framed the Constitution and the people adopting it had, of course, the same power to limit the jurisdiction of this court with respect to questions of law as they had with respect to questions of fact, and the effect of that limitation upon the power of this court to review the unanimous decision below, that there was evidence to sustain the verdict, is to withdraw a particular question of law which was formerly reviewable here from our jurisdiction. It was the intention of the framers of the Constitution to make the Appellate Division, when unanimous, the court of last resort upon this particular question."

The record before us discloses this situation : The city of Niagara Falls asks that defendant be restrained from maintaining upon Ninth street or Railroad avenue any obstruction, building or track, and that it be directed to remove existing obstructions ; also, that said street be declared a public highway.

In the McIntyre case the prayer of complaint is similar to that of the city as to obstructions, and further asks that the plaintiff be adjudged to have an easement in such portion of the street as will provide him a right of way to and from his premises.

The theory of the city is that the property involved is a public street.

McIntyre's position is that whether a public street or not, he, as the owner of an adjoining lot, has a private easement in the alleged street which has been invaded by the defendant.

In the case of the city the court found the *locus in quo* is a public street, dedicated in 1853 and accepted; that the defendant is the owner of the fee of the westerly half of the street subject to the rights of the public and abutting owners. In the McIntyre case the judgment conforms to the prayer of the complaint and the findings of fact.

The contention of the counsel for appellant in his first point is that the plaintiffs failed to make out a cause of action and that the complaint should have been dismissed ; nearly his entire brief is an effort to show a complete failure of proof, and that the undisputed facts support the defendant's position.

As the Appellate Division has unanimously decided that there was evidence supporting or tending to sustain the findings of fact, and this action of the court below appears upon the face of its order, we cannot examine the questions of fact so ably argued by appellant's counsel.

No exceptions to the admission or rejection of evidence seem to us as worthy of comment except two, which we will briefly consider.

At the trial two maps of the *locus in quo* were offered in evidence by the plaintiffs and received over the objection and exception of the defendant; one is known as the Witmer map, made in 1853 and filed in the clerk's office of Niagara county in 1855; the other is known as the Emslie map, made in 1856 and filed in 1872. The defendant claims title in its answers, alleging it to be "exclusive of any other claim, founding such claim upon a written instrument or instruments as being a conveyance or conveyances of the said premises, or upon the decree or judgment of a competent court," etc. In other words, the defendant relies on two sources of title, (1) a judgment and sale in a foreclosure suit, and (2) upon condemnation proceedings.

It is to be borne in mind, as already pointed out, that the cases at bar were tried together, and if the maps in question were material in either case, for any purpose, the exceptions fail, as the ground of objection is the general statement that they were incompetent, immaterial and improper.

As to the Witmer map made in 1853 and filed in 1855. It appears that the condemnation proceedings were instituted in 1853, and the report of the commissioners was not confirmed until September, 1858. It is clear that this map filed in 1855 could have no effect upon the regularity of the condemnation proceedings begun in 1853.

The referee found, however, that the defendant acquired no title by the condemnation proceedings, as they were never completed by the payment of the amount awarded; that there was no evidence of the deposit of the amount awarded in the savings bank, or payment thereof to the parties entitled thereto. In view of this latter finding of fact, which is conclusive on the defendant in this court, the bearing of the map

of 1853 on the condemnation proceedings and its admission in evidence are unimportant.

The next question is, whether the map of 1853 was competent, assuming defendant relies upon its foreclosure title? In October, 1858, about a month after the confirmation of the report of the commissioners in the condemnation proceedings, De Veaux College conveyed to one Robert B. Potter the premises now in dispute, describing in the deed the easterly line of the property as "running north nineteen degrees, east along the center of a sixty-six foot highway called Railroad Avenue to the north line of said lot number thirty-five." Potter gave a purchase-money mortgage to De Veaux College which was subsequently foreclosed and title duly passed to a purchaser. It is this title the defendant rests upon if the condemnation proceedings are irregular. In the deed to Potter, De Veaux College recognized the existence of Railroad avenue, and it must be regarded as between the parties to this conveyance and those claiming under them, as creating an easement for the purposes of access. (*Bissell* v. *N. Y. C. R. R. Co.*, 23 N. Y. 61; *Wiggins* v. *McCleary*, 49 N. Y. 346; *Taylor* v. *Hopper*, 62 N. Y. 649; *Matter of Eleventh Avenue*, 81 N. Y. 436; *Hennessy* v. *Murdock*, 137 N. Y. 317; *Lord* v. *Atkins*, 138 N. Y. 184, 191.) In view of this conveyance it was competent for plaintiff McIntyre to offer this map as bearing upon his rights as an abutting owner and grantee under De Veaux College.

It remains to consider whether the Emslie map of premises in question, made in 1856 and filed in 1872, was competent for any purpose in either suit. The plaintiff McIntyre in proving his title as an abutting owner put in evidence a deed from De Veaux College to himself, dated June 19, 1890, which described the premises conveyed by reference to the Emslie map. The record discloses that De Veaux College executed one hundred and fifty-six conveyances to different purchasers by referring to the Emslie map. It is clear that this map was not only competent, but absolutely essential in proving McIntyre's title, as his deed was meaningless without it. As there was no error in admitting in evidence the maps in question, and as we find no valid exceptions in the record,

the judgments appealed from should be respectively affirmed with costs.

O'BRIEN, J. (dissenting.)  The leading and important fact in this case is that the defendant is in possession of a parcel of land, within the corporate limits of the plaintiff, upon which it has constructed its railroad and laid down ties and tracks and has been for many years in the enjoyment and use of the same for railroad purposes.  It claims to be the absolute owner of this land having acquired and paid for it in conormity with law.  The plaintiff claims that the land is a public street and that the defendant in using it for railroad purposes is a trespasser.  This claim has been sustained by the judgment of the courts below.

The question presented by this appeal is whether the judgment has any legal basis upon which to rest.  It enjoins the defendant from maintaining its railroad tracks upon the land and adjudges that the *locus in quo* is a public highway.  It will be seen that the action is one in equity in which nothing but equitable relief is demanded or granted.

It might be inferred from the discussion in the courts below that the action was one for the recovery of real property, or at least for the purpose of trying the title to land, but it will be seen from an inspection of the complaint that such is not the fact.  The sole purpose of the action is to restrain the defendant from violating a municipal ordinance.  The complaint alleges that the common council has received authority from the legislature to enact ordinances forbidding obstructions in the public streets and to enforce such ordinances by injunction.  That it has in pursuance of this authority enacted an ordinance forbidding all persons from obstructing the streets and the complaint then proceeds to show that the defendant has violated it by maintaining its railroad tracks upon the land in question which is described as a street.  The defendant denies that any such authority was ever conferred upon the common council and it denies that any such ordinance was ever enacted or existed.  This reference to the pleadings will serve to give us a clear view of the theory of the action and disclose the principles upon which it was

founded. It is based wholly upon a municipal ordinance and the relief sought and granted is an injunction to restrain the defendant from violating it. At the outset there would seem to be a fatal infirmity in the judgment since there is no finding in the record that any such power was ever conferred upon the common council or that any such ordinance was ever enacted or existed. Thus the fundamental fact upon which the action is based was not found by the learned referee.

If the fact had been found another question would arise concerning the meaning and construction of such an ordinance. Granting that it is competent for the legislature to confer power upon the plaintiff to appeal to a court of equity to enjoin the violation of its own by-laws, forbidding the obstruction of streets, that power could not well apply to acts done by private individuals or corporations upon their own lands or upon lands to which they claimed title and held the possession. The plaintiff cannot, under the color of enforcing an ordinance against obstructing streets, bring the defendant into a court of equity to try the title to the land upon which it is operating its railroad and procure a judgment ejecting it from the use and possession. That, however, is substantially what has been done in this case. It may, I think, be stated as a general proposition, applicable to this case, that a party in possession of real property, claiming to own it under a record title, free from every lien or easement, cannot be ousted from the possession otherwise than by an action at law to recover it and in which the defendant is entitled to the constitutional right of trial by jury and the two new trials secured to him by statute. (Code, sec. 1525.) But the judgment in this case has ejected the defendant from the use and possession of the land in question as completely and effectually as if it was the regular action at law for the recovery of real property and the defendant has never had and never can have the benefit of those legal principles which enable every owner of land to defend the title and possession.

This proves that the present action is based upon a theory radically erroneous. It is not difficult to point out the error in which the action was conceived. It was projected upon the theory that under a delegated power to restrain the

obstruction of streets, the plaintiff may, in a court of equity, assail the title and possession of every owner or occupant of land which it may claim or allege to be a public street, although such occupant can show, as was shown in this case, not only actual possession for a long period of time but a clear record title. If the right of the plaintiff to appeal to a court of equity to restrain encroachments upon or obstructions in streets exists at all, plainly it must be limited to cases where there is no substantial dispute as to the existence of the street in fact or in law, or the right of the city to the control and possession of the land within its boundaries. This power cannot be used to try disputed titles or to determine adverse rights. (*Patterson's Appeal*, 129 Penn. St. 109; *Lanterman* v. *The B. Railway Co.*, 28 N. J. Eq. 1; *Morris Canal & B. Co.* v. *Central R. R. Co.*, 16 N. J. Eq. 419; *Ches. & Ohio Canal Co.* v. *Young*, 3 Md. 480; Lewis on Em. Domain, § 663.) If the judgment in this case is to stand, the defendant has lost the land in question through a proceeding in which there is no right to a jury trial or to any new trial under the statute. It is not claimed that the land in question is or ever was a street in fact nor that it was ever laid out, opened or used as such. The most that is claimed is that the city is entitled to have a street at the point. The defendant denies this and asserts that it owns the land. It is a dispute involving nothing but the title and right to the possession of a strip of land thirty-three feet wide. There is no allegation or claim of irreparable injury, multiplicity of suits, or other grounds of equitable jurisdiction. The purpose of the action is to obtain a perpetual injunction against the defendant restraining it from using this part of its roadbed in order that the plaintiff may use the land for a street. The only question involved is the legal title of the defendant to the land. I am not aware of any precedent for such an action and I doubt if any can be found, but the precedents and authorities against it are numerous. (*Rozell* v. *Andrews*, 103 N. Y. 150; *T. & B. R. R. Co.* v. *B., H. T. & W. Ry. Co.*, 86 N. Y. 107, 126–129; *McHenry* v. *Jewett*, 90 N. Y. 58; *Moore* v. *Brooklyn City R. R. Co.*, 108 N. Y. 104; *Thomas* v. *M. M. P. Union*, 121 N. Y. 45–52; *MacLaury* v. *Hart*, 121

N. Y. 636.; *Health Dept.* v. *Purdon*, 99 N. Y. 237; *Drake* v. *H. R. R. R. Co.*, 7 Barb. 508; *Hamilton* v. *N. Y. & H. R. R. Co.*, 9 Paige, 171; *Atty.-Gen.* v. *Heishon*, 18 N. J. Eq. 410; *Brass* v. *Rathbone*, 153 N. Y. 435; *Schneider* v. *City of Rochester*, 155 N. Y. 619.) The judgment in this case was an injunction, prohibitive and mandatory, without any facts to sustain it. But as I understand the complaint, the plaintiff's counsel does not claim any right to a perpetual injunction, or to try the question of title, or determine a naked legal right in this form of action under the general doctrines and jurisdiction of equity but only in virtue of a local statute empowering the city to enact ordinances to restrain the obstruction of its streets. The absence of any finding by the referee with respect to the existence either of such a statute or such an ordinance is quite significant. It would be quite remarkable if the common council of a city assumed to regulate the procedure of the courts for enforcing their own ordinances and still more remarkable if it should be found that the legislature conferred upon that body any such extraordinary power.

The facts of this case as found will not only make these views clearer but will disclose other theories upon which the learned counsel for the plaintiff relied and which were evidently adopted by the learned referee. It is found that the defendant is the successor in interest of the Niagara Falls and Lake Ontario Railroad Company, a corporation organized about the year 1853, and is possessed of all the rights that the latter acquired to the land in question. That railroad went into possession of the *locus in quo* as early as the year 1853 and ever since that time it has been held and possessed as railroad property in some form. It is also found that on the 14th day of June, 1853, the above-named railroad presented a verified petition to the Supreme Court, sufficient in form and substance to authorize the taking of land for its use. That commissioners were appointed to determine the value of the land to be taken and such proceedings were thereupon had that on the 9th day of September, 1858, a final order and judgment was entered condemning about twenty-eight acres and a half of land of which the *locus in quo* was a part. The judgment record shows that the commissioners awarded to the owner,

the executors and trustees of the will of Samuel De Veaux deceased, the sum of $11,800 and that they alone were interested in the land and the award. The order was entered by the consent of all the parties and confirmed the report of the commissioners and contained the following clause : " And that the balance of moneys thereby awarded or not yet paid be paid to Elijah Ford, Esq., or if he declines to receive the same, be deposited in the Erie County Savings Bank to the credit of the owners of said premises, and that the right to the said premises of the said Company be and the same is hereby in all things confirmed." There are two or three things apparent from this provision in the order that should here be noted. (1) It provides for the payment or deposit of the balance of the award unpaid without stating what that balance was or the amount. (2) It prescribes no time within which payment or deposit was to be made. (3) The railroad, being in possession, its right to the possession was thereby confirmed by the consent of the owners of the land and the parties interested in the award.

This record of a judicial proceeding to take lands for public use establishes absolute title in the defendant of the *locus in quo* at the date of its entry. It is not claimed that the plaintiff or the then village, its predecessor, had then acquired any right in a foot of this land for street or other purposes. Whatever right or color of right the municipality has to claim any part of this land accrued many years afterwards. It is perfectly obvious that no court can condemn the defendant as a trespasser for insisting upon the use of this land, and all of it, for railroad purposes without overthrowing in some way this judgment record of its title and right. But it has been held that the defendant must cease to operate a railroad upon this land for the reason that the plaintiff has a superior title to its use as a street. The courts below have nullified the record and refused to give it any effect whatever. The process through which that result was accomplished is very simple and may be stated in a few words. It was held that since the defendant failed to prove at the trial that the balance of the award was paid or deposited as provided by the order it took no title under the proceeding.

If that question was in the case at all it is evident that the learned referee proceeded upon an erroneous theory with respect to the burden of proof. The judgment is not attacked directly but collaterally. It is not attacked by any one who owned the land when condemned or by any one who has or ever had any interest in the award or any one who claims under the De Veaux estate by any prior grant or right. The point is raised by the plaintiff, a stranger to the whole proceeding, in an action to restrain the obstruction of a street. It may be asked how does it concern the plaintiff recently incorporated, when invoking the power of a court of equity to enforce one of its ordinances whether some unknown balance of the award was paid or not? What has the plaintiff to do with that question? How can such an issue be projected into a suit in equity to enforce a city ordinance the terms of which or the power to enact which is not disclosed by any finding in the case? Moreover it is not alleged that the award was *not* paid nor is that negative fact found. What the referee found, if he found anything, was that there was no proof whatever on that subject. But the law settles the question without any proof. The original taking and appropriation of the land followed by possession for more than forty years for railroad purposes without any claim by any one that the award was not paid creates an irresistible presumption that it *was paid.* It would be an intolerable evil if every stranger who happens to have a litigation with a railroad concerning the title or possession of its roadbed after a use of half a century could put the company to proof of actual payment in order to protect the right of possession. It would be impossible in most cases to comply with such a rule. The question in my opinion was not in the case at all, but if it was the burden of establishing non-payment was on the plaintiff and in the absence of any specific finding to that effect the question is eliminated from the case.

The erroneous theory in which this action was conceived and upon which it has been carried to a successful conclusion will appear in a still clearer light by reference to the real ground upon which the plaintiff claims that the defendant's roadbed is a public street. If the land in question had ever

been dedicated as a street or acquired in any way by the plaintiff for that purpose that important fact was susceptible of some clear and definite statement. The plaintiff's counsel and certainly the learned referee, could have informed us in plain terms just when and how it became a street. When we turn to the record we find nothing on the subject but a statement so vague that it really amounts to nothing as against the defendant. All we can learn from the complaint is embraced in the allegation " that on the 17th day of March, 1892, and for a long time prior thereto a public street or avenue had existed " at the point in question. It is perfectly evident that the land in question, acquired by the defendant under condemnation proceedings commenced in June, 1853, and confirmed in September, 1858, could not be converted into a street in March, 1892, without the defendant's consent or some action or legal proceeding on the part of the plaintiff to acquire the land subsequent to the defendant's proceedings, and nothing of that kind is claimed or pretended. The real claim of the plaintiff that the railroad bed is a street must therefore have been concealed in the convenient phrase " *a long time prior thereto,*" which means, of course, prior to 1892 but not necessarily prior to 1858, when the defendant's title was perfected. The findings of the learned referee are entirely silent with respect to the important *fact* necessary to the support of the judgment, that is, when and by what proceeding or grant prior to the defendant's title, conclusively established by the judgment record of September, 1858, this land was converted into a street. He does indeed find as a " *conclusion of law* " that the *locus in quo* was dedicated as a street in 1853 but no fact is stated or found upon which that conclusion can rest and hence it is of no importance. It is a question as to which of the parties has the prior and superior right to the land. We know precisely when and how the defendant's title accrued and that title cannot be destroyed by vague and cloudy assertions.

I have thus far dealt with some of the features of this case that are important to keep in view in order to consider another. The learned counsel for the plaintiff lays great stress upon the fact that the decision of the court below was

*unanimous.* So it was, and it seems to be assumed that in a case concerning the title and right to the possession of land, resting entirely upon record evidence or undisputed facts, this court is deprived of all power to determine whether the land belongs to the plaintiff or to the defendant when all the judges below have concurred in a judgment which ousts the defendant from the possession and gives it to the plaintiff. This view of the law is clearly incorrect. This court has the power and it is its duty to determine the construction and legal effect of every record and written instrument produced at the trial or involved in the decision of the referee. In so far as a case rests upon facts that were in dispute the unanimous affirmance of these facts below conclude this court. In so far as it rests upon the law or, what is the same thing, upon the meaning, construction and legal effect of records and written instruments, muniments of title, all these questions are before us. Indeed the determination of such questions is the peculiar function of this court. If the report of the learned referee is examined and the discussion in the court below on the appeal carefully read, it will be seen that they contain nothing material to the case except conclusions deduced from records and written instruments. The unanimous decision, however, is a double-edged sword that in this case is quite as dangerous to the plaintiff as to the defendant. We have seen that the burden of overthrowing the judgment record in the condemnation proceedings by proof that the award was not paid was on the plaintiff. The referee found that there was no evidence on that subject and a statement in the decision of a court or referee that there was no evidence on a material question has been held to be a finding of fact. (*Brokaw* v. *Duffy*, 165 N. Y. 391.) Hence it has been unanimously decided that an important negative fact, essential to the plaintiff's case, is unproven.

No review of this case would be just to the parties or the court without a clearer and more ample statement of the plaintiff's contention in this case and of the reasons and grounds of the claim made in its behalf that the land in question has been dedicated as a public street. There is no finding in the record from which we can learn how or when the idea that the land in question was a street ever originated, but we do know from

the argument of the plaintiff's counsel and the proceedings at the trial where the starting point is to be found.

(1) It appears that in December, 1855, while the condemnation proceedings were pending, and more than two years after they had been commenced, a surveyor named Witmer filed a map in the county clerk's office intended to represent a village to be called "Bellevue." On this map a large tract of land is described as "Railroad Grounds" bounded on the east by a paper street described as "Railroad Avenue." At the trial, the author of this map, over eighty years of age, was called by the plaintiff as a witness and testified that when he made the map there were in fact no streets on the land but "they were put on paper merely as a project." It needs no argument to prove that a map filed by a surveyor as a plan for a future village in anticipation, he having no title to or interest in the land represented, is no competent proof that the land described or represented thereon as streets has been dedicated by the owners to the public. Much less does it prove or tend to prove that the public ever accepted it. Hence Witmer's map did not prove or tend to prove that the lands of the De Veaux estate represented had been dedicated to the public as streets and yet it was offered and received for that purpose and is the basis of the plaintiff's claim. It is the first document in which the land in question is described or represented as a street. When offered it was objected to by the defendant's counsel as incompetent, but the objection was overruled and there was an exception. This ruling was error. It should have been excluded since it not only appeared to have been filed more than two years after the commencement of the proceedings by the railroad to condemn the land, but was not even claimed to be the act of any one who owned or had any interest in the land. It was no more competent to prove the fact that the owner had dedicated the land in question to the public as a street than it was to prove that he had dedicated the rest of the twenty-eight acres, represented as railroad grounds, to the railroad for its use.

(2) The plaintiff also offered another map made by another surveyor, one Emslie, filed June 19, 1872, nearly twenty years after the commencement of the condemnation proceedings

under which the defendant claimed title, upon which a street was represented east of the railroad property, as in the other map, but the center line of the street was indicated. This map was received under objection and exception. It was not shown to have emanated from the railroad or any one who had any interest in the land in question. This, very obviously, could not prove or tend to prove the dedication in 1872 of lands taken for railroad purposes under proceedings commenced in 1853 and confirmed in 1858. No one, of course, could dedicate the defendant's land without its consent.

(3) The next link in the chain of plaintiff's title to the land in controversy is quite important, since it reveals and places in a very clear light, not only the origin of this action, but the lax theories upon which the judgment in this case rests. On the 16th day of March, 1895, nearly forty years after the piece of land in question had been condemned and appropriated by the railroad, De Veaux College and seven private individuals presented a paper to the plaintiff's common council stating that they " *hereby determine* to lay out and open upon *our lands* a public street," etc., describing the land in question. The street was to be sixty feet wide and five hundred and thirty feet long and they gave and granted to the city all their title to the land to be used and enjoyed by the city as a public street. It appears from the evidence that this projected street was to be a *cul de sac* with a hotel at one end and the railroad property at the other but it included the land in question. The common council at once resolved " that the dedication of said street be accepted " and that the city attorney be directed to commence an action against the defendant enjoining it from the use of the land " *to test the ownership of said street.*" It was resolved at the same time that the city engineer be directed to " line up " and " stake off " the street so dedicated without delay. This is the only public act looking towards a dedication or acceptance by the city of the land in question as a street to be found in the whole record and it seems to be supposed that the proceeding had some effect upon the defendant's title under the condemnation proceedings. There is not in the record any allegation, proof or finding of the one fact which is indispensable:

to the support of the judgment, and that is that at some time *prior* to the condemnation proceedings the land was legally dedicated to the plaintiff or that it acquired title in some other way. What occurred after that date is of no consequence, since the plaintiff could acquire no right or easement then except from the defendant.

The referee has found that the land was dedicated, without finding when ·or in what way or by whom the dedication was made. The finding is therefore one of law. Dedication when applied to land is a species of grant or conveyance by which the title to real property is transferred from an individual owner to the public. The owner of the property must do something or perform some act in order to constitute any basis for such a change of title. The municipality must also do something in order to manifest its acceptance of the grant. When the necessary acts are performed on both sides, then, and not until then, can there be any dedication. The referee has not found any of these acts on the part of any one and hence his legal conclusion that there was a dedication amounts to nothing, since it is not sustained by any facts. · No act done subsequent to June 14, 1853, when the railroad commenced the condemnation proceeding, could have any effect upon the title thus acquired. (Laws 1854, ch. 282, sec. 6.) Not only must there be mutual acts on the part of both sides in order to constitute a dedication, but such acts must be followed by others. The statute which contains the Highway Law reads as follows:

"Every highway that shall not have been *opened and worked within six years* from the time it shall have been dedicated to the use of the public, or laid out, *shall cease to be a highway.*" (Sec. 99.)

Sec. 100. "All lands which shall have been *used by the public as a highway* for the period of twenty years or more, shall be a highway." (Laws of 1890, ch. 568.)

Thus it is an essential element in the process of converting real property into a public highway that it shall have been opened and worked within six years from the time of the dedication. There is no finding in this case that the *locus* was ever opened or worked as a street. The referee has called it

40

a street, but has found no fact to sustain that conclusion. A judgment restraining the defendant from the use of land in its possession and of which the plaintiff never had the possession, is not supported by the mere assertion that the land is a street. (*Speir* v. *Town of New Utrecht*, 121 N. Y. 429; *People* v. *Underhill*, 144 N. Y. 324; *Palmer* v. *Palmer*, 150 N. Y. 148; *Horey* v. *Vil. of Haverstraw*, 124 N. Y. 277.) It having been found by the referee that the land was included within the boundaries of twenty-eight acres condemned and appropriated by the railroad and for which it was ordered by the court to pay the owner $11,800, the defendant could not be ejected from it without finding some fact to show that the defendant in some way lost the right of absolute possession and the plaintiff gained it. The court cannot change the title and right of possession by designating the *locus* as a street.

The referee has confirmed the defendant's title under the condemnation proceedings by finding another fact and that is that in May, 1853, the railroad gave a blanket mortgage on all of its property, whether then existing or to be acquired in the future. The interest which it subsequently acquired in this land by the judgment in condemnation proceedings passed under the lien of this mortgage. This mortgage was subsequently foreclosed and all the property covered by it conveyed by the sheriff to an individual in the interest of the railroad and by him through various mesne conveyances to the defendant. In view of these facts it is difficult to see how the defendant violated any of the plaintiff's ordinances by insisting upon the right to occupy land that its predecessor purchased and paid for.

The learned court below sustained this judgment upon grounds that remain to be noticed. It did not adopt either the legal theory or the findings of fact of the referee but disregarded important findings as made without evidence, made some new findings and finally overthrew the legal force and effect of the judgment record in the condemnation proceedings. It was held that the legal effect, operation and scope of the judgment and presumption of the payment of the award were successfully rebutted and changed by two written instru-

ments subsequently executed and referred to. It was found that the railroad at or about the time of the commencement of the condemnation proceedings went into possession and that such possession and the long period of time following created a presumption that the award had been paid. This proposition, so far as it is one of fact, is certainly warranted by the evidence and so far as it states a legal principle, is clearly sound. (*Terry* v. *N. Y. C. R. R. Co.*, 22 Barb. 574.) But the learned court held that the findings of the referee as to the execution of the blanket mortgage, the foreclosure thereof and conveyance on the sale by the referee to Potter and the transfer of his title, through the several mesne conveyances, to the defendant, were not supported by any evidence. These important findings which showed title in the defendant as of a date long prior to any claim or suggestion from any source that the *locus* was burdened with any easement, were thus eliminated from the case. It is quite true, as the learned court held, that there is not in the case any testimony or document from which these facts could have been found, but there is at the end of it a stipulation by the respective attorneys to the effect that these findings are all supported by proof not printed in the record. The error in that regard is to be attributed to the manner in which the case is made up. It may not be amiss to suggest here that a point upon which the learned counsel for the plaintiff lays great stress, namely : that the findings of the referee were unanimously affirmed, is not justified by the record. What the learned court below held was that certain facts found by the referee were supported by evidence and certain other facts so found were not. The findings of the referee, therefore, were *not* unanimously affirmed nor affirmed at all. Some of them were affirmed and others rejected, and in this condition of the case it is difficult to see how that provision of the Constitution and the statute has any application. But the question whether the judgment record in the condemnation proceedings has been affected or changed by the written instruments subsequently executed and in regard to the rights of the defendant under that record, is clearly a question of law and this judgment must stand or fall upon the proposition that no title passed to the defendant

under it, for the reason that the award was *not* paid. The award amounted to a large sum of money and belonged to De Veaux College. The proposition assumes that the officers of that institution have never demanded or collected it, although it is over forty years since it became payable. It also assumes that the various railroad corporations that have been in possession of the property during all this time never paid or deposited the money as directed by the court or otherwise. No reasonable mind can fail to see that to reason and argue from such premises is to build up a pure fiction. Fictions are sometimes resorted to by courts to protect rights or to prevent wrong but never for the purpose of depriving one person of his property in order to give it to another. It must be admitted from the terms of the judgment that a part of the award was paid before the record was filed. The court below found and held that the railroad was in possession during the pendency of the proceeding with the owner's consent and this right to the property was confirmed by the terms of the order, the owner consenting. The title therefore passed to the railroad subject to a vendor's lien in the college for any part of the award that remained unpaid. The college from the moment of the entry of the judgment had no other interest in the land and could dedicate no part of it for streets without the consent of the railroad. But it is asserted that the railroad really took nothing by the final judgment in a proceeding that was pending for five years and this is based upon what would seem to be a very ordinary transaction, which the learned court held disproved the fact of payment of the award. On the 25th of October, 1858, about a month after the entry of the judgment in condemnation proceedings, the college gave to Robert B. Potter a quitclaim deed of a portion of the lands described in the judgment, including the land in question, bounding it on the east by the center line of Railroad avenue. Of course this deed was in law subject to all the rights of the railroad under the judgment and conveyed only such interest as the college had. Potter at the same time gave to the college a mortgage for $4,000 on the lands described in the quitclaim deed. This mortgage, many years afterwards, was foreclosed

and the same land was bid in by Clarkson N. Potter who conveyed it through another party to the railroad from which it passed through various mesne conveyances to the defendant. The conclusion deduced from these conveyances is that since De Veaux College, after it had been divested of the title to the *locus in quo* by the condemnation proceedings and judgment, and when it had no interest but a vendor's lien for the unpaid balance of the award, quitclaimed to Potter, bounding the land on the east by a street, therefore *it is a street* by this reference and recognition. The fallacy of this proposition is obvious. It assumes that the college could create a street not only by its own acts but upon lands that the railroad had already acquired and had been ordered to pay for It ignores the fact that the city or the village, as it was then, did not accept the gift, if it was tendered by a mere reference to a highway in a deed, within six years or within twenty years, or at all, until the proceedings in 1895, just before the commencement of this action to which I have already referred. It is not difficult to see what the real purpose of this deed and mortgage was. Neither of the Potters ever had any personal interest in the land. They were promoters of the railroad enterprise and their names were simply used as a conduit of the title of the lands of a railroad, financially embarrassed, to a new company when organized. These papers simply represent a method devised to pay or secure to the college the balance of the award and to pass the title on to a new company. This and nothing else was accomplished by the quitclaim deed and the $4,000 mortgage. As the learned counsel for the plaintiff substantially admits that in his brief we may accept the admission, supported as it is by the strongest probabilities. The defendant's title therefore rests upon two classes of written instruments.

(1) The judgment in condemnation proceedings and the blanket mortgage which represent the whole title of the original railroad. (2) The quitclaim deed from the college and the mortgage to it, representing the interest remaining in it *after* the judgment condemning the land. The learned court below held that the defendant's title rested solely upon the latter and entirely ignored the former. This view of the

defendant's rights is clearly erroneous. The plaintiff insists upon selecting from all the muniments of the defendant's title only those that are the weakest or the most favorable to its own claim, and rejects those that are older in point of time and more precise and comprehensive in the description of the thing conveyed. The defendant is entitled to stand upon all the deeds and the judgment as well. They are not hostile to but in aid of each other and all of them must be read together in order to determine the defendant's title. The quitclaim deed does not in the least detract from or cut down the title conveyed by the judgment and blanket mortgage. It is not an unusual thing for the owner of lands that have been condemned for railroad purposes and paid for to give to the railroad a release or a quitclaim deed and if he happens to describe the lands differently from the description in the judgment, that will not impeach or affect the judgment in the least. The railroad will not lose anything given by the judgment because the deed or the release omits to give it in the same terms. The title of the railroad rests upon the judgment and not upon the quitclaim or release, and so the fact that in the quitclaim the college bounded the lands on the east by the center of a street amounts to nothing as against the defendant, so long as they were not so bounded by the judgment. The railroad had to pay for all the land described in the judgment and took an absolute title, which the college had no power to cut down or change by description in the quitclaim, whether by mistake or otherwise. The quitclaim deed and mortgage, so far from rebutting the presumption that the award was paid, confirms it, and in no aspect can the transaction affect the legal force or scope of the judgment.

It is plain that the plaintiff has succeeded in this case, not upon the strength of its own claim, but upon what was supposed to be the weakness of its adversary. The prominent place that has been given in all the discussion below to the fact that the defendant failed to prove that the award was paid reveals the true theory of the plaintiff. It was assumed that it was not necessary for the plaintiff to establish anything precise or definite and that the burden was thrown upon the defendant of showing title to its roadbed under the

strictest rules and without any aid from these presumptions which proceed from long possession of real property. Aside from the fact that the college described the land in the quit-claim deed as bounded by a street, there is nothing precise or definite in support of the plaintiff's claim to be found in the complaint or the findings of the referee. When we seek to find out when and in what manner the land became a street prior to the taking by the railroad in 1853, there is absolutely nothing in the record to justify the claim. Nor is there anything more definite in the situation after the condemnation, even if that was of any consequence, until we come to the proceedings of the common council in 1895. That proceeding is certainly definite enough and was evidently considered necessary in order to warrant the city attorney in asserting to the courts that the *locus in quo* was a public street, or at least to give some color to the assertion and in this the municipal authorities were doubtless correct. But, obviously, that proceeding could not affect what had been done in 1858 or any right that vested in the railroad then under the condemnation proceedings. The vague and elusive theories upon which the claim of the plaintiff rests may be further illustrated by the fact that whereas the defendant has been ousted by the judgment from the possession and use of this land on the ground that it failed to prove that the award was paid, no one has ventured to state the amount that remains unpaid, whether one hundred, five hundred or five thousand dollars or all of it. The courts below should have given full effect to the legal presumption, which upon the facts of this case is irresistible, that the award was paid.

But the learned court below held that even if it was, yet, inasmuch as the defendant failed to connect its title with that acquired by the original railroad, it had no absolute title to the land in question. This error is the result of the rejection by the learned court of the referee's findings as to the execution of the blanket mortgage and the subsequent conveyances based upon it, as having been made without evidence. The mistake in that regard has already been pointed out. This quit-claim deed, followed by the mortgage, the judgment of fore-closure, the referee's deed to Potter and the subsequent

conveyances down to the defendant, furnish a satisfactory explanation of the fact that the college or any one representing its interests or acting by its authority has never made any claim upon any of the several railroads that occupied this property under claim of title, for any part of the award, confirmed by the court as the value of the land appropriated by the judgment, but they do not, in the least, change the legal effect of that judgment, but on the contrary confirm it. It might properly be observed, however, that there can be no real dispute about the fact that the original railroad at one time owned this land, and if the defendant did not connect itself with that title by a regular series of deeds, it was connected with it by possession and use. But even if the learned court was correct in the statement that the defendant failed to connect itself with the title under the condemnation proceedings, and that assertion was not based upon a mistake, as I think it is, certainly the plaintiff did not claim any right under it either, and since it was the assailing party and bound to prove a better title than the defendant before it could oust it from the possession, it failed to meet the burden of proof which every litigant assumes when seeking to recover real property. For the purpose of that point I have assumed that this was such an action, although the defendant has not been given the benefit of the rules of law applicable in such cases. I think the judgment ought not to stand and that there should be a new trial, costs to abide the event.

PARKER, Ch. J. and VANN, J. (WERNER, J., in result) concur with BARTLETT, J; HAIGHT, J., concurs with O'BRIEN, J.; GRAY, J., not sitting.

Judgments affirmed.