GOSSTOL REALTY CORPORATION, Respondent, Appellant, *v.* HARRY GILLMAN, Appellant, Respondent.

First Department, May 25, 1928.

*J. Elmer Melick* of counsel [*Henry M. Bellinger*, attorney], for the plaintiff.

*Samuel Marion*, for the defendant.

O'MALLEY, J.    The action is for the specific performance of a contract for the sale of real property, whereby the defendant agreed to purchase and the plaintiff agreed to sell certain premises at the northwest corner of Third avenue and One Hundred and Seventy-ninth street in Bronx county.    The contract bounded the easterly line of the property at its most northerly point on Third avenue " as legally opened," and the same line at its most southerly point on the same avenue " as opened."

Defendant's refusal of title was based upon the contention that plaintiff was not vested with a marketable title, if any, to a strip approximately two and one-half feet wide between the easterly line of the property to be conveyed and the westerly line of Third avenue as opened.    Good title as to the remainder of the property was stipulated to be in the plaintiff.

The issues stipulated, in so far as is here material, were the questions:  (1) Whether there was an outstanding strip of old Fordham avenue outside and to the west of Third avenue as legally

opened; and (2) whether title to this strip was vested in the plaintiff. It was likewise stipulated that if it should be determined that such an outstanding strip of land existed, and that title thereto vested in one James Martin by a deed hereafter to be considered, in such event the plaintiff was not vested with a good and marketable title, the plaintiff's title, if any, not having come through the Martin chain.

The Special Term has found that there was an "outstanding strip in the bed of old Fordham avenue between the present westerly line of Third avenue and the westerly line of former old Fordham avenue." It further held, however, that the deed to Martin did not convey the fee to the land in the bed of the street, and that consequently the original owner obtained a reversion of title to such strip. As the plaintiff claims through mesne grants from the grantee of the trustees of the estate of the original owner, it has been found that plaintiff had a good and marketable title to the whole of the premises to be conveyed. As both parties have appealed in so far as the decision is adverse to each, all of the issues stipulated are before us for determination.

Upon careful consideration of all of the evidence, we have reached the conclusion that, contrary to the findings of Special Term, there does not exist any such outstanding strip between the westerly side of Third avenue as opened and the easterly boundary of plaintiff's land. Whether plaintiff had failed to establish a *prima facie* case at the close of its evidence, is not here material. His motion for dismissal having been denied, the defendant proceeded at his peril to offer proof in his own behalf. He took the chance that such proof might supply any deficiencies in plaintiff's proof. We are, therefore, concerned with the question of whether the plaintiff made out a case upon the entire record. (*Porges* v. *U. S. Mortgage & Trust Co.*, 203 N. Y. 181.)

The following evidence leads to the conclusion that the strip in question does not exist, and that the westerly line of Third avenue as legally opened exactly coincides with the westerly line of old Fordham avenue.

The land to be conveyed, together with the bed of Fordham avenue, formerly Fordham road, was at one time held by Gouveneur Morris, Jr. He dedicated Fordham road as a public highway by filing in the office of the clerk of Westchester county a map of his farm, which showed the said road running north and south, and by filing in the same office duplicate maps showing a portion of the tract cut up into numbered lots with designated streets and cross streets. These included Fordham avenue. This avenue

existed as a public highway until Third avenue was legally opened by proceedings initiated by the commissioners of the department of public parks of New York city, pursuant to chapter 604 of the Laws of 1874. Section 3 of said law provides:

"§ 3. The maps, plans and profiles of the said commissioners of the department of public parks, made and certified to as hereinbefore provided, shall be final and conclusive as to the location, width and grades of the streets, avenues and roads, public squares and places exhibited on such maps, plans and profiles, as well in respect to the mayor, aldermen and commonalty of the city of New York, as in respect to the owners and occupants of lands, tenements and hereditaments within the boundaries aforesaid, or affected by said streets, avenues, roads, public squares and places, and in respect to all other persons whomsoever."

Pursuant thereto the commissioners prepared, certified and filed in the designated offices triplicate maps and plans for the laying out and opening of Third avenue, with a width of 80 feet from One Hundred and Fifty-fifth street to Pelham avenue. From one of such original maps and plans, part of this record, it appears that Third avenue included *wholly* within its lines Fordham avenue. Thereafter proceedings were initiated in the Supreme Court, New York county, to acquire land to the east of Fordham avenue, required to give Third avenue its designated width of 80 feet. In the petition the commissioners declared their purpose and intention of opening Third avenue *as shown* on the triplicate maps heretofore referred to. The damage map filed by the commissioners in this proceeding also shows that the westerly lines of Fordham avenue and Third avenue, north of One Hundred and Seventy-ninth street, coincided. Likewise the benefit map shows a coincidence of such lines north of One Hundred and Seventy-ninth street. The report of the commissioners and their proceedings were duly confirmed. The evidence further discloses that on the Gouveneur Morris maps the total designated frontage on One Hundred and Seventy-ninth street between Fordham avenue and Madison avenue (now Bathgate avenue), the street to the west of Fordham avenue, was 174.50 feet. In the Third avenue opening proceedings there was shown on One Hundred and Seventy-ninth street between Third avenue and Bathgate avenue, a total frontage of 169.77 feet. The westerly lot on this line at the corner of Bathgate avenue, by the Bathgate avenue widening proceedings was deprived on its easterly side of 4.73 feet. This added to the frontage as now existing, shows an original total length along One Hundred and Seventy-ninth street between these two avenues of 174.50 feet, which is the distance as given on the old Morris maps.

This computation also shows, of course, that the westerly lines of Third avenue and Fordham avenue coincide.

Defendant's expert was compelled to admit that the maps and plans aforesaid disclosed facts as above set forth. His testimony offered to establish the existence of the strip was predicated upon surveys and field notes made, not by himself, but only read by him; and also upon maps in street opening proceedings other than those of Third avenue. We do not deem his testimony and the other evidence submitted by the defendant to be of sufficient cogency to overcome the probative force of the evidence on behalf of the plaintiff. We find, therefore, that there was on the stipulated day no such strip as contended for by the defendant.

Assuming, but not conceding, of course, the existence of such strip, we are further of the opinion that with respect to plaintiff's title thereto the Special Term was correct in holding it was in the plaintiff.

The second stipulated issue must now be considered. It relates in part to whether by a deed from Morris to Martin, dated January 1, 1849, already referred to, title to this supposititious strip was vested in Martin. The deed described the premises by lot number according to a map and bounded it by metes and bounds " On the southeasterly side by Fordham Avenue as laid down on said map * * *;" on the northerly side by another numbered lot; " on the northwesterly side by Madison Avenue as laid down on said map * * * and on the southwesterly side by Monroe Street as laid down on said map * * *." The conclusion that such deed did not convey all the right, title and interest of Morris to Martin in and to the bed of Fordham avenue, need not rest solely on the authority of such cases as *Matter of City of New York* (209 N. Y. 344), cited at Special Term. Whether the case cited is applicable, the result remains unchanged. Assuming, but not conceding, that by the deed under consideration there may be said to arise a *presumption* that the grantor intended to convey to the center of the abutting highway, we are of the opinion that there exists sufficient other evidence found in the record to rebut such presumption and to show a contrary intention. The presumption is not a conclusive one. The construction of the deed may be determined by the intention of the parties when their relations and the circumstances surrounding the transaction are considered. (*Graham* v. *Stern*, 168 N. Y. 517; *Watson* v. *City of New York*, 67 App. Div. 573; affd., on opinion below, 175 N. Y. 475.)

The grantor's relations with these lands and circumstances attendant upon the grant are as follows: He had been theretofore appointed a commissioner of streets and roads in the city of New York. He had filed in the office of the clerk of the county of

Westchester a map of his farm showing Fordham road as being a public highway. Duplicate maps referred to in his deed to Martin both show Fordham avenue as having been excised from his property for such public use. There is also found of record in the office of the clerk of the county of Westchester a release from Morris for any *damages* for the laying out and opening of the streets and avenues shown upon these maps, including, of course, Fordham avenue, but there was no release of the *fee*. There is a similar deed of release recorded in the same place to other parties. These facts and all the other evidence before us lead to the conclusion that it was the clear intent of the grantor to yield Fordham avenue as shown on the plans and maps to the public for use as a highway. The fee of the land so dedicated remained in him and his successors subject only to the public easement. (*Appleton* v. *City of New York*, 219 N. Y. 150, 165, 166; *Porter* v. *International Bridge Co.*, 200 id. 234, 245, 246.)

Our conclusion that the deed from Morris to Martin did not carry the fee to the center of the highway might well be reached, irrespective of the surrounding circumstances detailed. In a deed quite similar to the one to Martin and also running from Morris, it has been decided that such fee did not pass to the grantee. (*Watson* v. *City of New York*, *supra*.) Under the doctrine of *stare decisis*, we feel constrained to follow the conclusion reached in the case cited.

If, therefore, inadvertently or intentionally, a strip of Fordham avenue was left outside and to the west of Third avenue as opened, and there was a consequent abandonment of such strip, the city never acquiring or using the same for the dedicated purposes, the public easement no longer burdened the fee and the same was entirely vested in Morris or his successors.

Having reached the conclusion that title to this strip never passed even in a qualified way to Martin, we must now determine whether there is sufficient proof to show that the same has vested in the plaintiff. Plaintiff's title is based upon the will of Morris, devising his real estate to certain trustees. These trustees, by deed dated December 5, 1890, conveyed to James Randall and Ellathear L. Randall, his wife, then owners of the land described in the conveyance by Morris to Martin, a certain strip, bounded and described as follows: " Beginning at the northwesterly corner of Fordham Avenue and Monroe Street, as the same are laid down on a map entitled ' Map of the Village of Upper Morrisania, in the Town of West Farms, in the County of Westchester, and State of New York,' made by Andrew Findlay, Surveyor, dated West Farms, November 11, 1848, and now on file in the Register's Office

of the County of Westchester, and running thence northerly along the westerly side of said Fordham Avenue, one hundred and eight (108) feet and two-tenths (2/10) of a foot to lot number 22 on said map, thence easterly and at right angles to said westerly side of Fordham Avenue two (2) feet and sixty-seven one-hundredths (67/100) of a foot to the westerly line of Third (late Fordham) Avenue as the same is now legally opened, thence southerly along said westerly or new line of Third (now Fordham) Avenue one hundred and eight (108) feet, more or less, to the point where the northerly line of said Monroe Street as laid down on said map, if prolonged, would intersect the same, and thence westerly in a straight line with said northerly line of Monroe Street two (2) feet and fifty-three one-hundredths (53/100) of a foot to the first mentioned corner and place of beginning, being all the narrow strip of land composing the part of said Fordham (now Third) Avenue, which has been closed by the widening and straightening thereof, and which lies along and in front of lot No. 21 on said map and between the old westerly line of Fordham Avenue, as laid down on said map and the aforesaid new westerly line of said Fordham (now Third) Avenue."

The grantees under this instrument clearly obtained good title to the strip now in dispute, the easterly line of which followed the westerly boundary of Third avenue as opened. Plaintiff's title from the Randalls by various mesne conveyances is unimpeached. In fact the parties stipulated that should there be a determination that such outstanding strip existed and that title thereto, divested of the public easement, had vested in the Randalls, then a good and marketable title was vested in the plaintiff.

Plaintiff having shown a good and marketable title, the defendant was not justified in refusing to accept on the closing day.

It follows that the judgment appealed from should be modified by striking therefrom the findings of fact and conclusions of law therein contained numbered 1 to 20, and as so modified affirmed, with costs to the plaintiff.

DOWLING, P. J., McAVOY and PROSKAUER, JJ., concur; MARTIN, J., concurs in result.

Judgment modified by striking therefrom the findings of fact and conclusions of law therein contained numbered 1 to 20, and as so modified affirmed, with costs to the plaintiff. Findings of fact inconsistent with the determination by this court that no strip exists outside and to the west of Third avenue in front of the premises in suit should be reversed, and new findings made of such facts proved as are necessary. Settle order on notice.