(19 App. Div. 457.)

PEOPLE ex rel. WELLS v. COMMON COUNCIL OF CITY OF ELMIRA.

(Supreme Court, Appellate Division, Third Department. July 6, 1897.)

ELECTIONS—VALIDITY OF BALLOT.

Under the provisions of the election law (Laws 1896, c. 909), a ballot on which the X mark, intended to designate the candidate for whom the elector desires to vote, is placed before such candidate's name, but not in the "voting space," is not a valid ballot, and is not entitled to be counted.

Landon, J., dissenting.

Application by the people, on the relation of H. Marvin Wells, for a writ of mandamus to the common council of the city of Elmira.

The relator was a candidate for alderman in the Third ward in the city of Elmira at the charter election held in such city on March 2, 1897. At such election certain ballots were cast in the several election districts in that ward which the inspectors of election rejected as void, and so returned to the canvassing board, but which the relator claimed were valid votes, and should have been counted. He thereupon presented to such board his petition requesting them to count the votes so returned to them as void by the inspectors. The board refused such request. The relator thereupon procured from a justice of this court, under the provisions of section 114 of the election law (Laws 1896, c. 909), an order requiring such board to show cause at a special term of this court to be held in Elmira on March 20, 1897, why they should not comply with the request so made. On the return of such order the court made a further order that a peremptory mandamus issue to such board, directing them to reconvene, and to count certain ballots, designated in such order and writ, as valid. In pursuance of such order, the peremptory writ of mandamus was issued, and from such order and writ the board of canvassers take this appeal. By the original canvass, as it appears from the return of the inspectors of election, there was a tie vote for alderman in the Third ward. By counting the votes directed by such order to be counted, the relator would have a majority of votes for such office, and would be entitled to a certificate from the board to that effect. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

S. S. Taylor, for appellant.
James Bacon and Judson A. Gibson, for respondent.

PARKER, P. J.    The sole question upon which the validity of the ballots in question turns is whether a voter who desires to vote for candidates of different parties must place the cross (X) mark in the "voting space," so called, opposite the name of the candidate for whom he would vote; or whether it will be sufficient if he place it before the name of such candidate, but not within the voting space; or, rather, the question is whether, if he places it before the name, but without the space, the ballot must be rejected.    The solution of this question depends upon the construction given to the provisions of chapter 909 of the Laws of 1896, commonly known as the "Election Law"; and I think it will be conceded by all parties that in determining the validity of a vote cast under the provisions of that act the court must determine not merely what was the intention of the voter, but whether he has expressed that intention in the manner provided by law.    The evils attending bribery and intimidation of the voter had become so flagrant that within a comparatively few years the legislature set itself about providing some system of voting that would

at least lessen, if not entirely prevent, that evil; and one of the principal features of that system was the absolute secrecy of the ballot. The "Ballot Reform Act," one of the earlier laws passed for the purpose of accomplishing this result, was entitled "An act to promote the independence of voters at public elections, enforce the secrecy of the ballot, and provide for the printing and distribution of ballots at public expense." No citation of authority nor extended argument is needed to show that in all subsequent amendments and acts this purpose has been steadily maintained. Every one at all familiar with the history of legislation upon this subject will agree that the primary object of all the statutes, the present one included, is to require the voter to so cast his ballot that there will be no possibility of revealing, by the act of voting, the political character of his vote. It was thought that by this absolute and compulsory secrecy in the method of voting, bribery and intimidation could best be prevented; and the act before us is overloaded with provisions tending to that single purpose. It is apparent, then, that under our present system the voter has something more to do than to plainly designate the person for whom he would vote. He must designate it in the manner prescribed by the statute. And it is further apparent that, in order to carry out the leading purpose of the statute, the method of voting becomes of the utmost importance. In construing this statute, then, and in seeking an answer to the question presented by this appeal, we are not at liberty to overlook the well-known object for which it was enacted; nor could we if we would, for so plain a purpose and intent constantly thrusts itself before us.

The first provision of the statute bearing upon the question is found in section 81, entitled "Form of the General Ballot." That section, among many other things, in substance requires that all ballots shall contain on the left of the name of every candidate printed thereon a blank space one-quarter of an inch wide, inclosed by heavier dark lines, which shall be called the "voting space." Such section further provides that each ballot shall be so printed as to give each elector a clear opportunity to designate by a "cross (X) mark," in the blank space therein designated as the "voting space," on the left of and before the name of each candidate, his choice of particular candidates. Following this provision, and in section 105, which is entitled "Preparation of Ballots by Electors," it is, among other things, provided as follows:

"It shall not be lawful to make any mark upon the official ballot, other than the cross (X) mark used for the purpose of voting, with a pencil having black lead, and that only in the circles or in the voting spaces to the left of the names of the candidates."

In these two provisions, a "voting space," inclosed within dark lines, is first created on the left of each candidate's name; and, secondly, it is declared to be unlawful to place such cross (X) mark upon the ballot in any other place than the circle at the head of each column, or in the "voting space" to the left of each candidate. Then follows, in the same section 105, subd. 2, the express direction that:

"If the elector desires to vote a split ticket, that is for candidates of different parties, he must not make a cross (X) mark in the circle above the name of the

party, but shall make a cross (X) mark in the voting space before the name of each candidate for whom he desires to vote," etc.

Here we have clear and explicit directions that any elector who desires to vote for candidates of different parties must make the cross (X) mark within the voting space, and that it is unlawful for him to put it outside of such space. And this plain direction of the statute would seem to be a plain answer to the question in the form first above stated, were it not for a provision that is contained in section 81, and which immediately follows the provision above quoted from such section. The provision is as follows: "The ballot shall be printed on the same leaf with a stub, and separated therefrom by a perforated line." On the stub shall be printed instructions as follows:

"This ballot shall be marked in one of two ways, with a pencil having black lead. To vote a straight ticket make a cross (X) mark within the circle above one of the party columns. To vote a split, that is for candidates of different parties, the voter should make a cross (X) mark before the name of each candidate for whom he votes," etc.

It is claimed by the relator that, because these instructions do not in express terms require the voter to make the cross (X) mark in the "voting space" before the name of the candidate, they are inconsistent with the voting provisions above referred to, and that, inasmuch as they are instructions placed before the voter at the time he is called upon to prepare his ballot, they indicate an intent on the part of the legislature to permit a split ticket to be voted by placing the cross (X) mark anywhere before the candidate's name. If the method of voting laid down in these instructions was in fact inconsistent with that provided for by the other requirements of that section and of section 105, above referred to, I should be inclined to think that the method stated in the instructions was the one which the statute intended. But the provisions are not inconsistent. The cross (X) mark can be made "before the name," and also be made in the "voting space." The law itself is explicit that it must be made within the voting space. The directions do not say that it need not. On that subject they are silent, but not contradictory. The omission to explicitly direct, in the instructions, that the mark must be within the voting space, is, I confess, calculated to mislead a voter who did not know the law itself. But is such fact a sufficient warrant for the conclusion that the explicit requirement in subdivision 2 of section 105, and the express declaration in section 81 that it should be an unlawful act to put the mark anywhere except inside of the "voting space," were not intended to be effectual? Are we to conclude that the method of voting by those provisions required was not the real method which the act intended, but that the "voting space" was a mere useless contrivance, without purpose, and to which the voter was to pay no attention whatever? I appreciate the injustice that may sometimes, and perhaps frequently, occur from the fact that the instructions do not fully and explicitly explain the method of voting which the act requires, but I cannot believe that, in order to correct such an omission, we are authorized to infer that no more of the plain and elaborate method laid down in the law was intended to be operative than was repeated in the instructions in question. Chapter 810,

Laws 1895, amending the "Election Law," provides for a blank space on the left of each candidate on the ballot (section 81), and also that the cross (X) mark shall be placed therein (section 104). And such law (section 81) also provides that the instructions printed on the stub shall direct the voter desiring to vote for an individual candidate to make a cross (X) mark "in the space before his name." It is urged on the part of the relator that the change made in the instructions provided for in the act of 1896 from those contained in the act of 1895, viz. leaving out the direction to make the mark in the space, indicates a change of intention on the part of the legislature, and that upon the repeal of that law by the act of 1896 the intent to require the mark to be made within the space was abandoned. But, if such was the intent,—if the method of voting in this respect was to be changed,—why provide in the act of 1896 for the printing of ballots with the blank space upon them? Why provide, in section 105, that the voter shall, in voting for individual candidates, make the mark within the voting space; and why provide in section 81 that it shall be unlawful for him to do otherwise? The act of 1896 was not an amendment of any act. It repealed all existing acts, and by itself creates an entire system of voting, new in some particulars, but following in most of them the provisions of former acts. In the face of the fact that the act itself carefully and explicitly provides for the same method of voting, I cannot infer any intent to change that method, because of the change in the phraseology of the instructions. Plainly, that change is owing to either an oversight in drafting the act, or else the legislators thought that, in the phrase in which it is, its meaning could not be misunderstood. The elector is told that in voting a straight ticket he must put the mark in the circle at its head; in voting for an individual candidate he must put it before his name. The voting space is plain, before each name, and why a voter would not naturally conclude that, like the circle, it was designed to receive the mark, is not very apparent to me. True, the mistake would not have been so likely to occur if the instructions had been more specific, but the legislators may very well have supposed they were specific enough; and I cannot conceive that they intended to nullify all the specific provisions of the act, and change the method of voting therein provided, by this omission in the instructions. I must conclude, therefore, that the act, both in terms and in intent, requires the voter to place the mark within the voting space, and that any other method of voting for an individual candidate is unlawful.

It is urged, however, that, even if such a method of voting is unlawful, the ballot is not to be rejected on that account; that the provision is to be considered as directory, not mandatory. And this position is taken because in specifying the ballots that are to be treated as void the law does not specially name one on which the mark is placed outside of the voting space. It is difficult to understand why the provision is not mandatory, since the act declares that any other method shall be unlawful (23 Am. & Eng. Enc. Law, p. 453), but let us examine what kind of ballots are by the act itself declared to be void. By section 105, immediately after the provision that "it shall not be

lawful to make any mark upon the official ballot other than the cross (X) mark used for the purpose of voting," etc., it is further provided: "Any ballot upon which there shall be found any mark, other than the cross (X) mark used for the purpose of voting, or a name or names written thereon otherwise than as heretofore provided," etc., "shall be wholly void, and no vote thereon shall be counted." Here is a plain provision that any ballot on which any mark shall be found shall be void unless it is "a cross (X) mark, used for the purpose of voting." Evidently it was not intended by the phrase "cross mark used for the purpose of voting" to except in all cases a mark of that particular shape. It was not intended that a mark identical with that in character and form could be placed anywhere on a ballot at the will of a voter. The exemption extends only to that particular mark, and to that mark only when "used for the purpose of voting." Now, when can it fairly be said to be so used? Only, it seems to me, when it is used in the manner permitted by the law. Suppose the voter places it across the first name of the candidate, or across his last name, or between the two names, or before both, and claims that he did so for the purpose of voting, nevertheless he has not used it for that purpose. There is but one way by which it can be used, under the statute, for the purpose of voting, and that is by being placed within the "voting space." If found without that space, it has no such expression, and in no fair sense can be said to be used for voting. It cannot be fairly said that, within the meaning of a statute which requires a voter to place the cross (X) mark within the space in order to vote, such a mark has been "used for voting" when placed anywhere else. A ballot, then, which has a cross (X) mark upon it that is neither in the circle nor in the voting space, has a mark upon it that renders it void. Such a mark is not the one excepted by the statute. It is not one used for the purpose of voting. If I am correct in this construction of the act, there can be no doubt but that the ballots in question were void. They were not only not voted in the manner required by the statute, but were also of the character of those which are by the statute declared to be void.

It is vigorously urged that this construction of the statute tends to bring the whole of it into contempt; that it puts it in the position of requiring from the elector a certain method of voting, while it instructs him to follow a different one. As suggested above, the difficulty with the argument is that the statute does not instruct him to follow a different one. The instructions do not necessarily conflict with the provisions of the law, and hence the rule in Hoey v. Gilroy, 129 N. Y. 132, 29 N. E. 85, and kindred cases, to which our attention has been called, does not apply. True, the statute would be in better form, and more likely to prevent error, had the instructions been more explicit; but we are not at liberty to change, by construction, its explicit provisions and manifest purpose, in order to relieve it from that criticism. It cannot be doubted but that, if the voter may place the cross (X) mark outside of the voting space, one additional means of enabling him to mark and exhibit the ballot cast by him is added to the many that now exist. The earnest purpose of the statute to enforce secrecy in his voting is to that extent ob-

46 N.Y.S.—45

structed, and I am the better satisfied with the construction above giv-
en when I consider that it is the one best calculated to advance the
object which the statute had in view. We are reminded by the case
of People v. Board of County Com'rs of Onondaga Co., 129 N. Y. 395,
29 N. E. 327, that, no matter how harshly or unjustly it may operate
in the particular case at bar, we are not at liberty to adopt a con-
struction of this statute which will render it more easy for the voter
to reveal that which it is the plain purpose of the statute to compel
him to conceal. Conceding that the instructions to the voter are
obscure, that they leave us in doubt as to just what method of voting
is required, we must refer to other parts of the statute, and read them
all together, to ascertain its intent. People v. Butler, 147 N. Y. 164,
41 N. E. 416. Upon reading the whole statute together, and also
having in view its well-known purpose, above referred to, I have no
doubt whatever that the legislature intended to require that the mark
be placed within the voting space, and that no elector's vote should
be counted who refused or neglected to adopt that method. Enter-
taining these views, I am forced to the conclusion that the ballots in
question were properly rejected by the inspectors, and that the order
appealed from was improperly made.

All concur, except LANDON, J., dissenting.

LANDON, J. (dissenting). The second article of the state consti-
tution prescribes the qualification of voters, and declares that such
qualified voters "shall be entitled to vote," that "laws shall be made
for ascertaining by proper proofs the citizens who shall be entitled
to the right of suffrage hereby established," and that "all elections
by the citizens * * * shall be by ballot, or," and the following
words were added in 1894: "By such other method as may be pre-
scribed by law provided that secrecy in voting be preserved." Vot-
ing by the aid of machinery had been proposed, and hence the words
added in 1894. It is plain enough that under the constitution as it
was and as it was amended, voting by ballot was regarded as a method
by which secrecy in voting would be preserved, and that the amend-
ment provided that, if other methods should be introduced, the like
secrecy should be preserved. If a ballot is to be used, the constitution
plainly contemplates that it shall not be so devised or hedged about
as to deprive such citizens as are "entitled to vote" "of the right of
suffrage hereby established." Hence it follows that laws professing
to confer upon the qualified voter the constitutional exercise of his
right of suffrage by means of the ballot should be so construed in
doubtful cases, if possible, as to give to the ballot cast by him its
constitutional effect. To construe the legislative regulation as to
the use of the ballot in such way as to defeat the constitutional right,
under the pretext that the letter of the statute must govern, and that
the intent of the constitution shall be lost sight of or subordinated
to such letter, is, I conceive, a mistake. All that may be said as to
the intent of the legislature to secure the most absolute secrecy is
well enough so long as it is not pushed to the extreme of defeating
the right the constitution intended to secure to the voter by means