THACHER et al. v. LENT et al. (O'NEILL, Intervener).

(Supreme Court, Appellate Division, Second Department. April 18, 1902.)

1. ELECTIONS—BALLOT—MARKING—VALIDITY.
   Under Election Law, § 105, declaring that it shall not be lawful to make any mark on the official ballot, other than the cross mark made for the purpose of voting, and providing that one straight line crossing another straight line at any angle in the voting space shall be a valid voting mark; and section 110, as amended by Laws 1901, c. 654, making a ballot void upon which there shall be found any other mark than a "single cross X mark made for the purpose of voting,"—a ballot marked in the circle by at least three perpendicular lines, and as many horizontal lines crossing the perpendicular lines, is void.

2. SAME—MUTILATION OF BALLOTS.
   Under Election Law, § 110, as amended by Laws 1901, c. 654, declaring that a ballot "defaced or torn by an elector" shall be void, the court will not hold that mutilated ballots are defective, when there is nothing to show that the ballots were torn by the electors, and when it does not appear when the mutilation occurred.

Appeal from special term, Kings county.

Application for a peremptory writ of mandamus by William H. Thacher and another against Herbert D. Lent and others, constituting the board of canvassers, and others, commanding them to reconvene and make an original statement of the canvass, and to exclude three certain ballots in making the canvass, in which Dennis O'Neill intervened. From the order granting the peremptory writ, and requiring the board to exclude one of the ballots and include the other two, the relators and the intervener appeal. Affirmed.

Argued before GOODRICH, P. J., and BARTLETT, JENKS, WOODWARD, and HIRSCHBERG, JJ.

Henry W. Smith, for appellant O'Neill.
Alfred E. Smith, for respondents Thacher and Wygant.

GOODRICH, P. J.   The court at special term made an order directing the issuance of a peremptory writ of mandamus commanding the persons composing the board of inspectors of the Second election district of the town of Eastchester, N. Y., to reconvene and sign an original statement and a certified copy of the canvass required by law, giving the result of the election of November 5, 1901, "excluding in said canvass and return, and counting no votes thereon for the office of justice of the peace, the ballot protested as marked for identification in the Democratic column, on which, in a circle at the head of said column, there appeared a mark other than a single cross, which is numbered twelve, and including in said count two ballots numbered ten and eleven, which were protested because torn across the bottom, mutilated, and not properly folded, and counting thereon votes for the Democratic candidates for justice of the peace."   No oral testimony was taken at the hearing at special term, and no fraud is charged on the part of any one in connection with the casting or canvassing of the alleged defective ballots; so the question of their illegality is to be determined alone by their condition and appearance, in the light of the statute.   The appeals from the order present the question whether the three ballots mentioned, and which accompany the record for our inspection, are lawful ballots, under the election law (chapter 909, Laws 1896), as amended.

Ballot No. 12 complies with the statute in all respects, other than certain pencil marks in the circle at the head of the column marked "Democratic Ticket."   In this circle there is a confused assemblage of crisscross pencil marks.   The eye is able to discern at least three perpendicular lines, three or four nearly horizontal lines crossing the perpendicular lines nearly at right angles, and three or four other lines crossing both perpendicular and horizontal lines at obtuse angles. The whole forms a jumble of lines, which cannot, even by the most vigorous imagination, be within the descriptive language of section 105 of the election law, which declares, "It shall not be lawful to make any mark upon the official ballot other than the cross X mark made for the purpose of voting," and rule 7 in that section, which reads, "One straight line crossing another straight line at any angle within a circle, or within the voting spaces, shall be deemed a valid voting mark."   The medley of marks on ballot 12 is in no sense a "cross X mark."   The amendment of section 110, rule 9, by chapter 654, Laws 1901, is significant and important.   Where the act before had used the words "cross X mark," the amended rule added the word "single," so as to make the descriptive words read, a "single cross X mark." To that amendatory word full effect must be given.   This added word, "single," indicates the intention of the legislature to require the mark to consist of two single crossing lines, and to exclude all others.   The section now describes a void ballot as "a ballot upon which there shall be found any mark other than the single cross X mark made for the purpose of voting."   A ballot is void if anywhere on it, either in the circle or before the names of candidates, there is any voting mark other

than the "single cross X mark." In this connection we must not lose sight of a primary and fundamental purpose of the statute regulating the character of the ballot to be used at elections. The statute was passed in accordance with the provision of our constitution requiring that "secrecy in voting be preserved." Article 3, § 5. The legislature has exercised great care, and formulated minute details as to the ballot and the method of casting it, so that the voter may exercise his franchise undeterred and unimpeded by any extraneous, repugnant, and detestable influences. To this end, nothing may appear upon the ballot which may lead to the identification of it with the voter who cast it. Whatever else the marking in the circle on ballot 12 may be, it clearly is not the "single cross X mark" required by the statute, which is described in two ways, viz., a "single cross X mark," and "one straight line crossing another straight line." The marking conforms to neither description. It may also be said that we cannot assume that the voter at first made a proper cross X mark, and then attempted to obliterate it by other lines, as there is no other mark on the ballot to indicate an intention to vote for any other candidate than those named in the Democratic column. The act and intention of the voter are apparent. He made the marking as a cross mark, to indicate his choice of ticket and candidates; but his intention makes no difference, as he did not comply with the law, in marking as he did. The ballot No. 12 was marked by the elector, and voted by him in violation of the law, is void, and may not be counted.

Ballots marked 10 and 11 are mutilated by having a strip torn off horizontally from the bottom. The strip torn from ballot 10 is about an inch and one-half wide, and contains the names of candidates for four offices. The strip torn from ballot 11 is about two inches wide, and contains the names of candidates for six offices. The tearing resulted in ragged edges, more or less deeply scalloped. These scallops in stub and strip nearly coincide with each other in both ballots 10 and 11. It does not positively appear by the record when the mutilation of these ballots occurred or was discovered, whether these torn off strips were deposited with the stubs in the box for detached stubs, or with the ballot in the ballot box, or how the strips happened to be in the folded ballot, or were brought to the court at special term; and certainly it does not appear that they were "torn by the elector." Section 110, rule 9. But it was conceded on the argument that the torn parts were found among the stubs, and the inference is inevitable that the tearing was due to the inadvertent act of the inspectors. If a ballot is mutilated before it is cast, the law provides for the disposition to be made of it, and for furnishing the elector with another ballot in its place. We must assume that the inspectors did not knowingly and intentionally disobey the law, and it is possible that they deposited the stub and the torn-off strips in the ballot box without knowing the fact that any strips had been torn off. If it conclusively appeared that the tearing off resulted solely from the intentional acts of the electors in folding their ballots improperly, we might be required to hold that the ballots in question were defective and void, but this fact does not conclusively appear. Such a conclusion would be merely speculative. The law favors the right of elective franchise, and goes far to secure

the elector in its exercise. Any statute which limits the method of voting should be strictly construed, so as not to interfere with the constitutional franchise of voting. We do not feel called upon to step out of the record in order to say that ballots 10 and 11 were defective or mutilated when passing from the hand of the voter to the inspector, to be deposited in the ballot box. We cannot charge any inadvertent act of the inspector upon the voter. We are of opinion that ballots 10 and 11 were properly counted.

The order of the special term must be affirmed, but without costs or disbursements. All concur.