(40 Misc. Rep. 536.)

### In re BERTREND et al.

(Supreme Court, Special Term, Saratoga County. April, 1903.)

1. INTOXICATING LIQUORS—EXCISE ELECTION—RECANVASS.
   A recount of votes cast at a town meeting on the excise question will not be ordered and the question resubmitted on application of the hotel proprietors of the town, where, since the election, the town clerk's office had been burglarized and the ballot box broken open.

2. SAME—CANVASSING BOARD.
   In a proceeding to set aside the canvass of the votes cast at a town meeting on excise questions, the town board is a proper party as a board, and its members are proper parties as individuals, they being the canvassing board.

3. SAME—RESUBMISSION.
   Under Laws 1901, p. 1535, c. 640, § 3, providing that no special town meeting for a resubmission of an excise question shall be called without a petition therefor, and an order of court thereon, filed with the town clerk, the filing with him of such a petition is not a condition precedent to an order for resubmission.

4. SAME—SETTING ASIDE CANVASS.
   A canvass and return of a vote on an excise question, decided adversely to the selling of liquors, except the pharmacist proposition, by majorities which cannot be overcome by counting the votes in the manner claimed by the contestant, will not be set aside.

Application of Alex. Bertrend and others to set aside the canvass by the town board of election by the town of Potsdam on questions submitted under section 16 of the liquor tax law (Laws 1901, p. 1535, c. 640). Application denied.

L. E. Ginn (Theo. H. Swift, of counsel), for petitioners.
W. G. Van Loon, for state commissioner of excise.
C. S. Ferris, for canvassing board.

HOUGHTON, J.  The applicants are proprietors of hotels in the villages of Potsdam and Norwood, situated in the town of Potsdam, St. Lawrence county, and make this application to set aside the return and canvass of the vote of the town on the local option questions voted upon at the last annual town meeting.  No point is made but what the various propositions, as provided by the excise law, were properly submitted and voted upon by the electors of the town.

There were 1,868 excise ballots cast, in the aggregate, in the three election districts in the town.  In District No. 3 there were three spoiled ballots, not voted, which are not included in the above total.  The town board certified that there was a majority of 112 against the selling of liquor by hotel keepers, and 183 majority against saloons selling liquor to be drunk on the premises, and 221 majority against the selling of liquor not to be drunk on the premises.  The pharmacist proposition was voted affirmatively.  Out of the total number of ballots, there were returned as totally blank, in the First District 30, in the Second District 7, and in the Third District 9, making 46 in all.  Some of the ballots were blank as to certain propositions, and marked properly for or against other propositions.  In District No. 1 there were either 72 or 74 ballots, and in District No. 2 there were 12 ballots, upon which the voter had voted both ways on some one proposition, and these ballots were treated by the inspectors as void ballots, and were not counted for or against any of the propositions which were correctly voted.  The inspectors did not mention these ballots in the figures of their returns, nor does it specifically appear that they were marked with the reasons for rejection, and placed in a separate package, as required by the election law.  The original returns of the inspectors in District No. 1, presented to the town board, certified that on question No. 1 the total number of votes were 1,100; on question No. 2, 1,002; and on question No. 4, 1,024.  The tally sheet and all of the affidavits show that in this district there were 30 totally blank ballots.  On presentation of the return to the town board for the purpose of canvass, one of the inspectors, against the protest of the other, subtracted these 30 blank ballots from the totals given, making new figures and crossing out the old ones certified to by the inspectors.  In place of 1,024 opposite question No. 4, the figures 974 appear.  It is plain that this number should be 994, for all the affidavits agree that what the inspector did was to subtract the 30 blank ballots from the totals given.  Besides, the vote is stated to be in the affirmative 467, in the negative 527, which make a total of 994, and leave a majority of 60 against, as stated.

The town meeting was held on the 10th of February, 1903, and the count and declaration of the vote by the town board were made on the following day.  The ballots were placed in a box, and remained in the custody of the town clerk for about a month, when some unknown person burglarized the town clerk's office and opened the box, and, it is supposed, tampered with the ballots.  Without inspection, however, the box was sealed, and now remains in the condition it was after the burglary.

The applicants had a month in which to make an application for a recount, and the present application was not made until the 14th of

April—about a month later. If the ballots had not been tampered with, I would order a recount; but it is apparent that that would do no good at the present time, for there would be no certainty that the ballots remained as they were at the count. On the contrary, the presumption is that the ballot box was broken open for the purpose of tampering with the ballots, either by abstracting some, or substituting others, or re-marking them.

A recount being useless and impossible, it must be determined whether the original canvass shall stand, or whether it shall be set aside, and a new submission of the excise questions ordered.

Notice was served by the applicants upon the state excise commissioner, as the law requires; and the court has permitted the town board to intervene, and in its behalf opposing affidavits have been submitted.

It is urged that the town board, which was the canvassing board, is not a proper party to these proceedings. I think the board as a board is a proper party, and that the board as individuals are proper parties. It cannot be that it was the intention of the Legislature to say that no one except the state commissioner of excise should have a right to be heard on an application of this character. While it is proper for him to be notified of the situation, and of what is transpiring with respect to license or no license, it is the community which has the right of local option that is interested. The applicants are interested in the decision of that question, because they have property which is adversely affected by a vote of no license. Each citizen of the town also is interested, as well, and has the right to have any questions arising submitted to the court.

It is claimed by opposing counsel that the court has no power to order a resubmission of the excise questions, because no petition for a resubmission and a new town meeting has been filed in the town clerk's office. Section 16 of the liquor tax law (Laws 1901, p. 1535, c. 640, § 3) provides that no special town meeting shall be called until an order of the court for a resubmission shall be filed, as well as such petition. Notwithstanding intimations in decisions to the contrary, I think the provision of the statute is so plain that I must overrule that objection, and hold that the applicants in that respect are regular.

The applicants insist that the changing by one inspector of the returns from the First District, by subtracting 30 from each total certified, and putting into the return such reduced total, nullifies the return, and makes the subsequent canvass by the town board void. While this act was wholly unwarranted, and a thing which the inspector had no right to do, yet I do not think it had the effect of nullifying the return. No question is made but what on the fourth proposition, in District No. 1, 467 electors of the town voted in favor of a license to hotel keepers, and 527 electors voted against it; and so of the other propositions as stated in the different numbers in the return. Any act of one inspector, or even the board of inspectors, after a count, could not disfranchise these voters. Their wishes had been expressed by their ballots, and the result ascertained, and no negligent or careless or vicious act of a town official could override it.

In People ·ex rel. Hirsh v. Wood, 148 N. Y. 146, 42 N. E. 537, Chief Judge Andrews says :

"Each voter received his ballot from the inspectors, marked it with the cross under the party name and emblem, and returned it to the inspectors, by whom it was deposited in the box and subsequently counted. We can conceive of no principle which permits the disfranchisement of innocent voters for the mistake or even the willful misconduct of election officers in performing the duty cast upon them. The object of elections is to ascertain the popular will, and not to thwart it. The object of election laws is to secure the rights of duly qualified electors, and not to defeat them."

In People ex rel. Maxim v. Ward, 62 App. Div. 531, 71 N. Y. Supp. 76, the inspectors of election had omitted to indorse upon the backs of ballots rejected as void their reason for such rejection, and had omitted to place such ballots in a sealed package and to file the same with the original statement of the canvass; and the court held that the election was not void, but that a peremptory mandamus should issue, requiring the inspectors to perform their duties in those respects.

In Matter of Thacher v. Lent, 71 App. Div. 483, 75 N. Y. Supp. 732, two ballots were discovered to be mutilated by having torn from the bottom strips containing the names of candidates. These strips were found in the box for detached stubs. The court held that such ballots must be counted, because it was the carelessness of the inspectors in tearing off the stubs which mutilated the ballots, and that the voter should not be deprived of his vote by reason of such act on the part of officials.

In People ex rel. Guernsey v. Pierson, 35 Misc. Rep. 406, 71 N. Y. Supp. 993, a recanvass of the votes on the local option questions was refused, notwithstanding the fact that 38 ballots were not accounted for; it being shown that these 38 ballots were blank and void, but not returned as such.

Applying the principles enunciated in the above cases, and bearing in mind that the electors of the town of Potsdam were in no way chargeable with the irregularities of the boards of inspectors and the town board of canvassers, I think this application must be denied.

The affidavits of all the inspectors of election in the various districts, except one in the Second, have been submitted on one side or the other. The affidavits are all unanimous that the 46 blank ballots were really blank, having simply been voted without any marking upon any of the propositions. So do the affidavits all state that the votes on the various propositions, for and against, which were actually returned, were correctly counted as set forth in the returns, and that the returns were absolutely correct, so far as they went. These returns show that the least majority against any of the propositions was that of granting licenses to hotel keepers, and that the majority was 112. Two of the inspectors in District No. 1 say that in that district 72 ballots were thrown out as void because of double marking. Mr. Peck, who makes an affidavit upon both sides of the question, says there were 74. All agree that in District No. 2 there were 12 of such ballots rejected as void. In District No. 3, such ballots were counted for or against the propositions properly voted. Assuming that Mr. Peck is correct, and that there were 74 ballots rejected in

district No. 1, there would then be 86 ballots thus improperly rejected and defectively returned. It is hardly probable that all of these ballots showed affirmative votes on the question of issuing license to hotel keepers. But assume that they were all in the affirmative, and counting them as such, still the no-license proposition in the case of hotel keepers would be defeated by 26 majority. Counting all such ballots in the affirmative for the other propositions would, of course, leave them defeated, even by a greater majority. It is therefore manifest that the electors of the town, in a very large and representative vote, defeated the excise questions in controversy by substantial majorities, after counting the disputed ballots in the most favorable manner to the applicants.

These 86 ballots should have been returned by the inspectors, and included in their totals of the whole number of votes cast. It is said that the excuse for not returning them was that in the blank returns provided by the town clerk no columns for such return appeared. This, however, did not relieve them from following the plain direction of the statute. It may also be that, in the figuring of the votes cast upon the various propositions, the inspectors were not as clear as they might have been. Not all the ballots were voted alike upon all the propositions. Some were not voted at all. Others were voted in favor of, with a part against. But whatever the situation, it finally comes down to the 86 ballots rejected as void and not returned.

The electors of the town should not be deprived of their choice in the matter of license by the acts of the inspectors, which could not change the result, nor should the town be put to the expense of a resubmission of the questions by a special town meeting. Whether the town voted wisely or not upon the question of license to hotel keepers is of no moment. It is unfortunate that any mistakes were made by the inspectors. It appears quite clear from the affidavits submitted that the electors of the town voted against the three propositions for issuing license, and that by no process of counting could any one of the propositions receive an affirmative majority. The carelessness or misconduct of the inspectors of election or canvassing board should not and does not, I think, defeat the will of the electors as expressed by their votes. The application must be denied, with $10 costs.

Application denied, with $10 costs.