THE PEOPLE OF THE STATE OF NEW YORK ex rel. JOSEPH KRULISH, Appellant, v. CHARLES V. FORNES et al., Composing the Board of Aldermen of the City of New York, Defendants, and PATRICK CHAMBERS, Respondent.

1. MUNICIPAL CORPORATIONS — ALDERMEN — ELECTION CONTEST. It seems, that a statutory provision that a board of aldermen shall be "the judge of the election returns and qualifications of its members," does not limit it to an examination of the election returns or deprive it of the right to determine contested elections.

2. APPEAL — ELECTION CONTEST — QUESTION OF LAW. On appeal from an order of the Appellate Division affirming on certiorari proceed-

ings of a board of aldermen determining an election contest, no question of law is presented for review as to the validity of ballots cast, where the return does not show what the action of the board was on specific ballots.

*People ex rel. Krulish* v. *Fornes*, 79 App. Div. 618, affirmed.

(Argued March 18, 1903; decided May 1, 1903.)

Appeal from an order of the Appellate Division of the Supreme Court in the first judicial department, entered February 19, 1903, which affirmed the proceedings of the board of aldermen of the city of New York in determining that the defendant Chambers had been elected a member of that body and dismissed a writ of certiorari to review such proceedings.

The facts, so far as material, are stated in the opinion.

*William A. Keener* and *David Steckler* for appellant. This court has jurisdiction to entertain the appeal from the order for the reason that the Appellate Division affirmed the proceedings of the board in refusing to seat the relator. (Code Civ. Pro. § 190, subd. 1; *People ex rel.* v. *Board of Tax Comrs.*, 85 N. Y. 655; *People ex rel.* v. *Comrs.*, 103 N. Y. 370; *People ex rel.* v. *York*, 166 N. Y. 582.) This appeal only involves the determination of questions of law. (*People ex rel.* v. *Bd. of Canvassers*, 156 N. Y. 36; *People ex rel.* v. *Sutphin*, 166 N. Y. 163.) By section 27 of the charter of the city of New York the board of aldermen is empowered to determine, subject to review by the courts, the election of its members. (*People ex rel.* v. *Hall*, 80 N. Y. 117; *Ex parte Strahl*, 16 Iowa, 367; *Booth* v. *County Court*, 18 Col. 564; *People ex rel.* v. *Livingston*, 79 N. Y. 279; *People ex rel.* v. *Pease*, 27 N. Y. 45; *Matter of B. E. R. R. Co.*, 125 N. Y. 445; *Hammock* v. *L. & T. Co.*, 105 U. S. 77.) The action of the board determining the right to a seat is reviewable by the writ of certiorari. (*People ex rel.* v. *Hall*, 80 N. Y. 117.)

*Jacob Marks* for respondent. The appeal should be dismissed, because the Appellate Division unanimously affirmed the judgment of the tribunal below and dismissed the writ.

(*People ex rel.* v. *Board R. R. Comrs.*, 158 N. Y. 421; *People ex rel.* v. *French*, 123 N. Y. 636 ; *People ex rel.* v. *Barker*, 152 N. Y. 417; *People ex rel.* v. *Board R. R. Comrs.*, 160 N. Y. 690 ; *Szuchy* v. *H. C. & I. Co.*, 150 N. Y. 219 ; *People ex rel.* v. *Lord*, 157 N. Y. 408 ; *People* v. *Helmer*, 154 N. Y. 596 ; *People ex rel.* v. *Barker*, 155 N. Y. 322 ; *Reed* v. *McCord*, 160 N. Y. 330.)   If the power of the board under section 27 is to be extended beyond the determination of " election returns," so as to include the power to determine the contest made by the relator and to examine ballots, it must be deemed to have decided the contest under the judicial powers which it possessed, which involved the examination of questions of fact not reviewable. (*Hatzell* v. *Hall*, 80 N. Y. 117 ; *People ex rel.* v. *Comrs.*, 149 N. Y. 31 ; *People ex rel.* v. *Hoffman*, 166 N. Y. 462 ; *People ex rel.* v. *Common Council*, 78 N. Y. 33.)   This court has no jurisdiction to review the decision of the board of aldermen. (*Dudley* v. *Mayhew*, 3 N. Y. 9 ; *Hollister* v. *Hollister Bank*, 2 Keyes, 245 ; *Plankroad Co.* v. *Morley*, 23 N. Y. 554 ; *Darlington* v. *Mayor, etc.*, 31 N. Y. 164 ; *Cook* v. *Whipple*, 55 N. Y. 163 ; *C. S. Co.* v. *Clark*, 100 N. Y. 369 ; *Heiser* v. *Mayor, etc.*, 104 N. Y. 68 ; *Matter of N. Y., L. E. & W. R. R. Co.*, 110 N. Y. 374.)

CULLEN, J.   The relator and the respondent Chambers were candidates for the office of alderman from the twenty eighth district of the city of New York at the general election held in November, 1901.   On the face of the returns of the election inspectors Chambers appeared to have been elected by a plurality of sixteen.   On an application made to the Supreme Court, Mr. Justice LEVENTRITT, on an examination of the void and protested ballots contained in the envelopes, rejected twenty-three as void, and directed the board of county canvassers to reduce the apparent plurality to eight votes.   Subsequently the relator filed a protest with the board of aldermen chosen at said general election, claiming that he instead of Chambers was elected as a member of that body.   The pro-

test was referred to a committee, a majority of which reported that he was elected by a plurality of one hundred and three votes. The minority reported that Chambers was elected by a plurality of seventy-three votes. The board adopted the report of the minority and dismissed the application of the relator. Thereupon the relator sued out a writ of certiorari on the return to which the Appellate Division affirmed the proceedings of the board of aldermen.

It appears from the opinion rendered that the learned Appellate Division construed the provision of section 27 of the charter of the city of New York, " The board of aldermen .* * * shall be the judge of the election returns and qualifications of its members, subject, however, to review by certiorari before any court of competent jurisdiction " as limiting the board to an examination of the election returns and not authorizing an inquiry of who, in fact, was legally elected. This result is reached by treating the word " election " adjectively as qualifying returns, a use claimed to be justified by the absence of any comma between the two words. We think this construction is wholly inadmissible. The provision that a legislative body shall be " the judge of the election returns and qualifications of its members " is of such general enactment in constitutions and statutes in this country that its construction does not fairly admit of dispute. It is found in the Federal Constitution, in that of this state and in those of at least twelve other states, not only in the very same words but in the same sequence of words, " the election(s) returns and qualifications " of its members. In about one-half of these cases the word is in the singular, " election," and in about the same number there is no punctuation mark between the words " election " and " returns." Under this authority each house of Congress and each branch of the state legislature has exercised the most plenary power to determine who has been elected members of the body. Indeed, it has been generally assumed by publicists and writers on constitutional law that the absolute right of determining the election of its members is a power necessary to the independence of the legis-

lative branch of the government. While, of course, this consideration does not apply to a municipal corporation, still it has been a very common (though not universal) practice to confer upon the boards of aldermen of municipalities or their legislative assemblies the same power on the subject as that possessed by the legisiature. There is this distinction between the two. The action or determination of a house of the legislature is final, while that of a municipal assembly or chamber is subject to review by the courts even without express declaration to that effect unless it has been enacted in the charter to the contrary. This practice has prevailed in this state in the enactment of the charters of the cities. In that of the former city of Brooklyn it was enacted that the common council should be "The sole judge of the qualifications, elections, and returns, of its members." This language would seem to admit of no question. In the general act for the government of cities of the second class (Chap. 182, Laws of 1898) by section 17 it is enacted the common council shall be "the judge of the elections, returns and qualifications of its members." He we find "elections" in the plural followed by the comma. The construction of this language also seems very clear. In fact, we may say that the expression "election returns and qualifications" has so well defined and settled a meaning in American jurisprudence that its construction cannot be varied by the presence or absence of punctuation marks or by the use of the words either in the singular or in the plural. The board of aldermen had, therefore, full power to determine who was legally elected to the office, the relator or the respondent.

We appreciate the argument of the learned court below that since full and adequate machinery is now provided for the speedy review of errors of inspectors of election in counting or rejecting ballots, it is not necessary or wise that the board of aldermen should go behind the election returns. The argument would seem, however, to prove that the whole authority to determine the election returns of its members, whether we construe that as meaning election and returns or election-returns is no longer necessary, a proposition we are

by no means prepared to deny. So far as a determination can be based on election returns that determination is made by the board of canvassers. It is of a purely ministerial character and any error made in the determination can be summarily corrected by the courts. A second examination of the face of those returns would seem to be wholly unnecessary and to subserve no practical purpose.

Though we differ from the learned Appellate Division in its construction of the charter we think that the record before us presents no question of law for our review. We did not hold in *City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.* (168 N. Y. 610) and in *People ex rel. Sands* v. *Feitner* (173 N. Y. 647) that this court is prohibited by the Constitution and the statute from reviewing a unanimous affirmance by the Appellate Division of the findings of either ministerial tribunals or *quasi* legislative bodies. Nevertheless with controverted questions of fact we cannot deal. Presumptively the determination of who has received a plurality of votes and has been elected to an office presents an issue of fact or, at least, may present an issue of fact. It may be that in some election controversies there is no dispute as to the facts and that the case turns wholly upon questions of law. In such cases, and in those in which, though depending partly on issues of fact, errors of law are complained of, in order for this court to review the decision the question of law must be presented in such form that we may clearly see what disposition was made of it in the court below and how it affected the result reached. In *People ex rel. Feeny* v. *Board of Canvassers* (156 N. Y. 36) it was held that whether a ballot was so marked as to be void presented a question of law to be determined on the face of the ballot, and to that decision we adhere. But the difficulty in the present case is that the return does not show what the action of the board of aldermen or of the minority of its committee, whose report it adopted, was on specific ballots. The relator seeks to supply this defect by statements in his petition for the writ that certain ballots were conceded by both parties to be valid and

others were contested, and that the contested ballots were marked by the committee. It further states that certain ballots, giving their number, were rejected by the committee and the remainder of the number declared good, and a summary of the result of the canvass of the ballots as made by the majority of the committee. But the action of the minority of the committee, which by adoption became subsequently the action of the board, is not given. It may be possible (though I do not think so) for us to discover by diligent search what ballots have been held good by the board of aldermen and what bad. The ballot boxes have been brought to this court, but there cannot be imposed upon us the duty of a recount and recanvass of the ballots cast. If the relator sought to review, as a question of law, the validity of various ballots, he should have applied for a writ requiring the board of aldermen to specifically return the number of uncontested ballots given for each party, the ballots in dispute and its action or determination on each of such disputed ballots, and the grounds therefor. This appeared in the *Feeny* case. No such return is before us.

O'Brien, J. I agree with Judge Cullen that there is no question presented by the record in this case that is open for review in this court, and hence the order should be affirmed. The functions of this court end when that conclusion is reached, and I am not in favor of dealing with an important question of statutory construction in a case in which we all agree that no questions are presented for the decision of this court. Whatever construction is given to the statute it cannot affect the decision of this court, and hence anything we may say about it might very well be considered as *obiter*.

The controversy involved only the question whether the relator or the defendant was elected to the office of alderman. That general question was one of fact and it was passed upon by the election officers at the polls, whose duty it was to count the votes, by the board of county canvassers whose duty it was to canvass the returns, by the board of aldermen whose

duty it was to ascertain which of the candidates voted for was entitled to sit in that body, and finally by the Appellate Division, upon a writ of certiorari that gave to the court jurisdiction of the law and of the facts.    That court unanimously affirmed the determination made by all the various ministerial bodies referred to, and thus the controversy. is ended unless some specific question of law survives these decisions.    If I understand the very latest utterances of this court there is no question before it arising upon this record.    (*People ex rel. Sands* v. *Feitner*, 173 N. Y. 647; *City of Niagara Falls* v. *N. Y. C. & H. R. R. R. Co.*, 168 N. Y. 610.)

If, under such circumstances, it is thought to be necessary or proper to deal with the section of the charter referred to (§ 27), then I can only say that I do not concur in the construction given to it in the opinion, since I think the learned court below was clearly right in holding that no judicial power was conferred upon the board of aldermen by that section. My reasons for this conclusion can be very briefly stated.    It is admitted that when the section was made a part of the charter the punctuation was changed by dropping out the comma after the word *election*.    Punctuation, or those marks which for ages have been in common use to divide writings into sentences and sentences into clauses, is what gives virility, point and meaning to all written composition.    It is a part of every statute and so this court has held.    (*Tyrrell* v. *Mayor, etc., of N. Y.*, 159 N. Y. 239.)    A change in punctuation is frequently as material and significant as a change in words.    It is related of an eminent member of the British House of Commons that once in the heat of debate he called one of his-fellow members a scoundrel.    This was held unparliamentary language and the speaker, or perhaps the house, ruled that the offending member must apologize and the latter submitted to the decision and tendered the apology in these words, without punctuation : "I called the honorable gentleman a scoundrel it is true and I am sorry for it."    It is plain that this sentence might convey either one of two meanings, one utterly the reverse of the other, depending entirely upon

the punctuation.　Punctuated in one way it would mean this: "It is true that I called the honorable gentleman a scoundrel and I am sorry that I did."　Punctuated in another way it would mean this: "I called the honorable gentleman a scoundrel it is true that he is a scoundrel and I am sorry that he is one."　The meaning first mentioned was the one which the house evidently adopted.　The last one would only add insult to injury and would be a gross contempt of the house.

The words of section twenty-seven are found in constitutions and statutes, but they do not always mean the same thing, since the meaning which is given to them in the Constitution would be wholly unsuitable and inapplicable in a municipal charter.　(*People ex rel. Hatzel* v. *Hall*, 80 N. Y. 117.)　The city charter was framed by a commission of experts composed of eminent lawyers and citizens.　The members of that commission knew the meaning of words and the value of punctuation and they deliberately dropped out or removed the comma in order, as I assume, to change the meaning. The work of the commission was adopted by the legislature and the section was enacted without the comma, as the commission had framed it.　It is, therefore, a very reasonable conclusion to hold that the commission and the legislature intended by such an important and material change in the composition to express the idea that the board of aldermen was not to be the judge of the election but of the *election returns* of its own members.　Under the Constitution the legislature possesses all the powers in regard to the election of its members that a court possesses in an action in the nature of a quo warranto.　It possesses judicial powers in the broadest sense, but it was not intended that such powers should be exercised by the board of aldermen, and, hence, the punctuation was changed in order to accomplish that intention.　If the same judicial powers were intended to be conferred by this section upon the board of aldermen as the courts and the legislature possessed, then it would follow that the board of aldermen, divided into hostile camps upon a question involving the right of a person to sit in that body, could institute a judicial inquiry by calling wit-

nesses to prove how many votes were cast for the respective candidates by aliens, or minors, or non-residents of the district or by convicted and unpardoned felons. It must, necessarily, follow that the board would have power to decide every question of law arising upon such a sweeping inquiry. It is quite inconceivable that either the commission that framed the charter or the legislature that enacted it intended to open such a Pandora's box upon the community, for the government of which it was engaged in framing an organic law.

It is very much more reasonable to assume that what was intended by this section, as changed in the punctuation, was to confer upon the board of aldermen the power to determine which of the contesting parties had been elected according to the statements appearing upon the face of the returns. That is the power that is exercised by boards of supervisors when acting as a board of canvassers. It is not quite correct to say that the aldermen would have no question to decide upon an inspection of the returns. It might have, as boards of supervisors frequently have, questions of importance to decide. In the first place, the regularity of the returns. In the second place, it frequently happens and might have happened in this case that the returns would show a certain number of votes cast for " Patrick Chambers," some votes for " Chambers " merely and still other votes for " Pat Chambers " or " P. Chambers," and so on, the same condition of things existing in regard to the opposing candidate. In such a case the board of aldermen had the power to decide, subject to review by the courts, whether such imperfect votes should be counted for the proper candidate, although the ministerial bodies that had acted before might have rejected such votes and refused to count them. Other errors or omissions could be suggested which the aldermen would have power to deal with upon the face of the returns, but that it was intended that they should possess all the powers of a court on a trial of a quo warranto or the powers of the legislature when acting under the Constitution, seems to me to be utterly inadmissible. This view

would enable a local body, such as a board of aldermen is, to make any decision that it thought best with respect to the election and decide many questions that would be beyond any power of review by the courts, so I think that the construction which the learned court below gave to the section was a reasonable one and in accord with sound principles of construction and with the meaning that was intended to be expressed when the section was framed and enacted.

PARKER, Ch. J., BARTLETT, HAIGHT and WERNER, JJ., concur with CULLEN, J.    VANN, J., concurs with O'BRIEN, J.

Order affirmed, with costs.