THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM W. COLNE, Relator, v. ALFRED E. SMITH and Others, Composing the Board of Aldermen of the City of New York, and JOHN L. DEMPSEY, Defendants.

First Department, May 29, 1919.

Election Law — contest by candidate for alderman of the city of New York — certiorari to review proceedings of committee of board of aldermen — extent of review — marking ballot — marks, erasures, etc., rendering ballot void — failure to paste paster ballot and war ballot together.

In a proceeding by certiorari to review the determination of the committee on privileges and elections of the board of aldermen of the city of New York declaring one candidate elected and unseating another, the action

of said committee on all of the ballots protested and marked is open to review notwithstanding the unanimous action of the committee upon certain ballots.

Any erasure on a ballot manifestly made by a voter, or failure to cross the line of the cross mark within the voting space, or making a cross mark on the ballot other than in the voting space, or using any instrument other than a pencil with black lead in marking the ballot, or making a semicircular mark over and detached from the cross mark, or making one-half of a cross mark, or making a number in the voting space or an incomplete cross mark, or a single line in the voting space instead of a cross mark, or any mark other than a cross mark in the voting space, or a figure consisting of many lines but not constituting a cross mark, renders the *entire* ballot void.

Voting more than once for the same candidate by making a cross mark in the voting space opposite his name in different columns, or making a heavy cross consisting of more than one line crossing another and with flourishes or separated at the end, evidently made by the voter in running the pencil back and forth, or making an $\times$ in the marked out space not requiring an $\times$ where the name of the candidate is written in, or a cross of double lines or evidently accidental dots or pencil lines, writing part of a name of a candidate whose name is not printed in the space for writing in a name, or a smudge or ink mark on the border which might have been made by the inspectors, does not invalidate the ballot.

In determining whether a cross mark complies with the law and whether slight lines or dots were accidentally made, allowance must be made for infirmity of the voter as to eye-sight or physically.

There is no presumption that a ballot was torn by a voter.

The voter must show his intent or his ballot cannot be counted.

Hence, in the instant case, erasures, pencil marks other than proper cross marks, incomplete cross marks and unauthorized pencil markings, tears and holes evidently made by voters, writing the word " Republican " on the ballot, voting for candidates of another county, writing in name of candidate with ink instead of pencil with black lead, making cross mark with ink, were held to render the ballots void.

Under section 512 of the Election Law, providing that no mere informality in carrying out the provisions of law regulating the manner of taking and returning votes of soldiers shall invalidate the election, the mere omission to paste the paster ballot and the official war ballot together does not invalidate the ballot, where they were folded together.

The general provisions of the Election Law with reference to erasing and marking ballots, apply to soldiers, and they are not excepted by section 512, which relates only to informalities in carrying out the law.

CERTIORARI issued out of the Supreme Court and attested on the 21st day of June, 1918, directed to Alfred E. Smith and others, composing the board of aldermen of the city of New York, commanding them to certify and return to the

office of the clerk of the county of Kings all and singular their proceedings had in the matter of the contest of John L. Dempsey against the election of William W. Colne as a member of the board of aldermen for the forty-sixth aldermanic district at the general election held on the 6th day of November, 1917.

The board of aldermen unseated the relator and seated the respondent John L. Dempsey.

The hearing on the writ was transferred to this Department. (See 187 App. Div. 901, 955.)

*Francis H. Warland,* for the relator.

*William E. C. Mayer* of counsel [*Terence Farley, William A. Walling* and *E. Ivan Rubenstein* with him on the brief; *William P. Burr, Corporation Counsel*], for the board of aldermen.

*A. I. Nova,* for the respondent John L. Dempsey.

LAUGHLIN, J.:

The certified statements of the returns made by the inspectors of election were duly filed and were canvassed by the board of aldermen acting as the board of canvassers. It was found that the relator, who was the Republican candidate, received 4,206 votes and the respondent, who was the Democratic candidate, received 4,205 votes. A certificate of election was accordingly issued to the relator who duly qualified. The board of aldermen met on the 7th day of January, 1918, and at that time it received a formal notice of contest from Dempsey, specifying the grounds upon which he claimed to be entitled to be seated, to which Colne filed a formal answer and the matter was referred to the committee on privileges and elections, consisting of nine members.

Section 27 of the Greater New York charter (Laws of 1901, chap. 466) provides as follows: " The board of aldermen shall determine the rules of its own proceedings; shall be the judge of the election returns and qualifications of its own members, subject, however, to review by certiorari of any court of competent jurisdiction." And formerly the statute did not limit the review to certiorari. (See Laws of 1897, chap. 378, § 27;

Laws of 1882, chap. 410, § 71; Laws of 1873, chap. 335, § 6.) It has been held that these statutory provisions authorize the board of aldermen to determine any contest over the election of a member and to go behind certified statements returned by the inspectors by which, as a board of canvassers, it was bound, and to recanvass the ballots and determine any question relating to the validity of the election. (*People ex rel. Krulish* v. *Fornes*, 175 N. Y. 114; *People ex rel. Hatzel* v. *Hall*, 80 id. 117.) An order to open the ballot boxes and the envelopes containing the void and protested ballots was obtained, and all of the ballots, 9,985, cast for the office were produced before and canvassed by the committee in the presence of counsel for both claimants; and evidence was taken with respect to an unmarked, or blank official ballot, and a Greater New York paster ballot, which were detached, and they were marked Exhibits " A " and " B " respectively.

The method of procedure adopted by the committee was to make a record of the number of ballots in each district conceded by counsel to be good and of the ballots in each district protested by either party, together with the grounds of protest, and those so protested were marked with exhibit numbers, commencing with Exhibit No. 1, and were placed in separate envelopes. On the completion of this work, it was found that there were upwards of nine hundred ballots so protested. The committee then held executive sessions, at which the ballots in each election district were considered and voted upon. In this canvass by the committee records were made of the ballots unanimously conceded by the members of the committee to be valid and void, and those held valid and void by a majority vote only. The views of the members of the committee differed with respect to eighty-one ballots, thirty-two of which were for Colne and held to be void by a majority vote, and forty-nine of which were for Dempsey and held valid by a majority vote. This action of the majority of the committee gave Dempsey a plurality of five and the majority so reported; and the minority reported in favor of deciding the Dempsey votes void and the Colne votes valid. The majority report was adopted and Colne was unseated and Dempsey seated. The relator attempted to confine the review by certiorari to the eighty-one ballots concerning

which the committee differed; but counsel for Dempsey insisted that he was not bound by the unanimous action of the committee in rejecting ballots for him which he claimed to be valid or in counting for Colne ballots protested by him and that the review is authorized, not to determine whether particular ballots were properly counted, but whether the ultimate action of the board of aldermen in unseating Colne and seating Dempsey, which depends upon which of them received the greater number of valid votes, was proper. This proceeding evidently was intended by the Legislature to be a final review of the election contest and we, therefore, decided that the action of the board of aldermen on all of the ballots so protested and marked with exhibit numbers was open to review; and we suggested that counsel endeavor to agree upon as many of them as possible and then submit briefs specifying the exhibits each party desired us to pass upon, classifying them according to the objections made thereto. That was done with the result that, in addition to the 81, Dempsey asked us to examine and pass upon some 293 others and Colne 148 others.

An examination of the ballots confirms the election of Dempsey and by a much larger plurality than that given by the board of aldermen. We find many more errors in counting void ballots than in rejecting valid ones. This is just what might be expected in authorizing a judicial review of a canvass of ballots under our Election Law, as it existed in the fall of 1917, for down to that time the trend of legislation had been away from having the validity of the ballot depend on the *intent* of the voter to be determined by the election inspectors, and toward having such validity determined by the application of fixed rules prescribed by the Legislature, leaving to the election inspectors no discretion (Election Law [Consol. Laws, chap. 17; Laws of 1909, chap. 22], §§ 82, 86, added by Laws of 1911, chap. 891, as amd. by Laws of 1916, chap. 537; Id. § 331, added by Laws of 1913, chap. 821, as amd. by Laws of 1916, chap. 537; Id. § 358, as amd. by Laws of 1916, chap. 537; *People ex rel. Karns* v. *Porter*, 176 App. Div. 330), and courts apply such statutes rigidly as intended by the Legislature to prevent corruption in election while inspectors of

election and a board of laymen, such as the board of aldermen, incline toward a liberal construction and are apt to declare ballots containing markings other than those authorized by law valid or invalid according to whether they deem that the marking was or was not made to *identify* the ballot of the voter, which is not the test prescribed by the Legislature. The Legislature had prescribed clear and definite rules for the guidance of voters and they were printed on the face of the ballots. If voters took pains to ascertain their rights or observe such rules, there was no difficulty in casting valid ballots, for each voter was informed by such rules that if he tore or defaced or wrongly marked his ballot he was entitled to return it and obtain another. (Election Law, §§ 331, 358, as amd. by Laws of 1916, chap. 537.) If a voter tore or defaced or wrongly marked his ballot and failed by the exercise of this privilege of returning it, to cast a ballot not torn, defaced or wrongly marked, the Legislature deemed that it was better that his ballot should be declared void than that by a tear, erasure or wrong marking it might be identified for a corrupt or unlawful object or purpose. To that end the Legislature prescribed how the voting cross × mark should be made and where it should be placed and that any mark other than as expressly authorized and any erasure or tear on the ballot should render the entire ballot void. (Election Law, §§ 331, 358, as amd. by Laws of 1916, chap. 537.) Section 358 of the Election Law, as so amended, defined a void ballot as one on which there should be found any mark other than a cross × mark for voting made with a pencil having black lead and in the voting space only, or one containing any writing other than authorized in voting for a candidate whose name was not on the ballot, or one defaced or torn by the voter, or containing any erasure made by the voter, or one in which there should be found inclosed a separate piece of paper or other material, and provided as follows: "A cross × mark shall consist of any straight line crossing any other straight line, at any angle, within a circle or voting square" and that any mark other than a cross × mark or any erasure should make the whole ballot void, but that

"no ballot shall be declared void because a cross ✕ mark thereon is irregular in form."

Under these and similar provisions of the former Election Law, it has been held that any erasure on the ballot manifestly made by the voter, or failure to cross the line of the cross mark within the voting space, or making a cross mark on the ballot other than in the voting space, or using any instrument other than a pencil with black lead in marking the ballot, or making a semi-circular mark over and detached from the cross mark, or making one-half of a cross mark, or making a number in the voting space, or an incomplete cross mark, or a single line in the voting space instead of a cross mark, or any mark other than the cross mark in the voting space, or a figure consisting of many lines but not constituting a cross mark, renders the *entire* ballot void and that whether a ballot is valid or void is a question of law. (*People ex rel. Karns* v. *Porter*, 176 App. Div. 330; *Matter of Slevin*, 179 id. 618; *People ex rel. Brown* v. *Board of Suprs., Suffolk County*, 170 id. 364; *People ex rel. Feeny* v. *Board of Canvassers*, 156 N. Y. 36; *Matter of Garvin*, 168 App. Div. 218; *People ex rel. Bell* v. *Board of Canvassers*, 65 Misc. Rep. 223; *Matter of Houligan*, 55 id. 5. See, also, *Matter of Fallon*, 135 App. Div. 195; 197 N. Y. 336; *People ex rel. Wells* v. *Collin*, 19 App. Div. 457; affd., *sub nom. People ex rel. Wells* v. *Common Council*, 154 N. Y. 750.) But voting more than once for the same candidate by making a cross mark in the voting space opposite his name in different columns, or making a heavy cross consisting of more than one line crossing another and with flourishes or separated at the end, evidently made by the voter in running the pencil back and forth, or making a ✕ in the marked out space not requiring a ✕ where the name of a candidate is written in, or a cross of double lines or evidently accidental dots or pencil lines, writing part of a name of a candidate whose name is not printed in the space for writing in a name, or a smudge or ink mark on the border which might have been made by the inspectors does not invalidate the ballot. (*Matter of Fallon, supra; People ex rel. Feeny* v. *Board of Canvassers, supra; People ex rel. Brown* v. *Board of Suprs., Suffolk County, supra; People ex rel. Karns* v. *Porter, supra; Matter of Garvin, supra.*) In determin-

ing whether a cross mark complies with the law and whether slight lines or dots were accidentally made, allowance must be made for infirmity of the voter as to eye-sight or physically (*Matter of Fallon, supra*), and there is no presumption that a ballot was torn by the voter.    (*Matter of Thacher* v. *Lent,* 71 App. Div. 483.)    The voter must show his intent as required by the statute or his ballot cannot be counted.    (*People ex rel. Damon* v. *Fessenden,* 31 App. Div. 371; *People ex rel. Wells* v. *Collin,* 19 id. 457; affd., *sub nom. People ex rel. Wells* v. *Common Council,* 154 N. Y. 750.)    These rulings cover all points presented in the case at bar with the exception of a few votes of soldiers.    We have examined the ballots in the light of the statutes as so construed and find with respect to the eighty-one ballots concerning which the vote of the committee on privileges and elections and of the board of aldermen was not unanimous that ballots marked Exhibits Nos. 54, 443, 538, 572, 611 and 813 for Colne, but not counted for him, and 34, 35, 247, 459 and 650, counted for Dempsey, are void on account of erasures; that 1, 95, 169, 430, 466, 468, 710, 809 and 817 for Colne, but not counted for him, and 318, 413 and 719, counted for Dempsey, are void on account of pencil marks other than proper cross marks; that 81, 226, 371, 378, 646, and 666 for Colne, but not counted, and 5, 11, 13, 387, 417, 418, 489, 533, 678, 681 and 701, counted for Dempsey, are void for not containing complete cross marks and for other unauthorized pencil markings; that No. 312, counted for Dempsey, is void on account of holes, evidently made by the voter; that 871, for Colne, but not counted, is void on account of indelible pencil markings, and that all other of said eighty-one ballots are valid.    With respect to the ballots composed of Exhibits " A " and " B," which is one of these, the evidence taken by the committee fairly shows that the paster ballot was folded inside the official war ballot and that there was merely an omission to paste them together.    In view of the provisions of the statute with respect to taking and returning the votes of soldiers (Election Law, § 512), by which it is provided that no *mere informality* in carrying out the provisions of law regulating the manner of taking and returning such votes should invalidate the election and that such provisions should be liberally construed, we think such omission did not invali-

date the ballot.   This result shows that if the review were confined to the eighty-one ballots the action of the board of aldermen could not be sustained.   But with respect to the other ballots counted for Colne and challenged by Dempsey, we find that Nos. 10, 23, 53, 55, 56, 73, 83, 86, 87, 130, 170, 171, 175, 192, 195, 205, 220, 224, 234, 267, 293, 294, 513, 521, 543, 545, 556, 581, 600, 608, 609, 612, 628, 638, 640, 653, 667, 744, 769, 773, 810 and 855 were void for erasures; that Nos. 17, 21, 22, 78, 191, 202, 236, 351, 555, 606, 633 and 805 were void on account of pencil marks other than proper cross marks; that Nos. 20, 85, 92, 93, 98, 174, 222, 356, 481, 539, 542, 585, 631, 708, 735, 807, 816 and 820 were void for not having complete cross marks and for other markings; that Nos. 349, 356 and 390 are void on account of tears and holes evidently made by the voters.   There were also four soldiers' votes, Nos. 845, 860, 891 and 896, counted for Colne, which must be held to be void — 845 for having the word " Republican " written upon it; 860 because candidates in other counties than Kings were also voted for, and 891 and 896 because Colne's name was not on the ballots.   With respect to the Dempsey ballots not counted by the board of aldermen, but which he claims are valid, we find that Nos. 144, 186, 370, 419 and 475 were valid and should have been counted for him.   With respect to other Dempsey ballots challenged by Colne, we find that Nos. 66, 114, 273, 342, 403, 404, 474, 561, 620, 754, 898, 897 and 890 were void for erasures; that Nos. 716 and 728 were void for defective cross marks; that 859 is void on account of the names of candidates being written in ink, and that No. 889 is void on account of ink cross marks. Ballots No. 659, 897, 898 and 890 are soldiers' ballots, but we think the general provisions of the law with respect to erasing and marking apply to them and are not excepted by the provisions of said section 512, which relate only to informalities in carrying out the provisions of law relating to taking and returning the votes of soldiers, and the liberal construction required is limited thereto.

The result of our review of the action of the board of aldermen is an increase in Dempsey's plurality from five to forty-two votes.

It follows that the action of the board of aldermen in

unseating the relator and in seating Dempsey should be confirmed and the proceeding dismissed, with fifty dollars costs and disbursements to the respondents.

CLARKE, P. J., SMITH, MERRELL and PHILBIN, JJ., concurred.

Writ dismissed and proceedings confirmed, with fifty dollars costs and disbursements to respondents.